ACCEPTED
03-16-00557-CV
13916141
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/21/2016 5:58:02 PM
JEFFREY D. KYLE
CLERK

## NO. 03-16-00557-CV

IN THE COURT OF APPEALS - THIRD DISTRICT OF TEXAS

Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/21/2016 5:58:02 PM
JEFFREY D. KYLE
Clerk

## CHRIS PETERSON, ROBERT TURNER, SCOTT REICHARDT and PAMELA REICHARDT, *Appellants*

## v.

## OVERLOOK AT LAKE AUSTIN, L.P., *Appellee*

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/21/2016 5:58:02 PM
JEFFREY D. KYLE
Clerk

Accelerated Appeal from the 201st Judicial District Court
Travis County, Texas
Hon. Orlinda Naranjo, Presiding
Trial Court Cause No. D-1-GN-15-005194

## APPELLEE'S BRIEF, SUBJECT TO MOTION TO DISMISS FOR LACK OF JURISDICTION

Carl J. Wilkerson
State Bar No. 21478400
cwilkerson@brstexas.com
Bush Rudnicki Shelton, P.C.
200 N. Mesquite St., Suite 200
Arlington, Texas 76011
Telephone: (817) 274-5992
Facsimile: (817) 261-1671

Attorneys for Appellee
Overlook at Lake Austin, L.P.

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF APPELLEE AND COUNSEL

**Appellee:**              Overlook at Lake Austin, L.P.

**Appellee's counsel:**    James Rudnicki (trial court)
State Bar No. 24006148
james@brstexas.com
Bush Rudnicki Shelton, P.C.
2508 Ashley Worth Blvd., Suite 200
Austin, Texas 78738
Telephone:  (512) 263-8408
Facsimile:    (512) 263-2562

Carl J. Wilkerson (trial court; appeal)
State Bar No. 21478400
cwilkerson@brstexas.com
Bush Rudnicki Shelton, P.C.
200 N. Mesquite St., Suite 200
Arlington, Texas 76011
Telephone:  (817) 274-5992
Facsimile:    (817) 261-1671

Leonard W. Woods (trial court)
State Bar No. 21958050
lwoods@dwmrlaw.com
Duggins Wren Mann & Romero, LLP
600  Congress Ave., Suite 1900
P.O. Box 1149
Austin, Texas 78767-1149
Telephone:  (512) 744-9300
Facsimile:    (512) 744-9399

# TABLE OF CONTENTS

Identity of Appellee and Counsel…………………………………………………ii

Table of Contents…………………………………………………………iii

Index of Authorities………………………………………………………iv

Statement of the Case……………………………………………………1

Appellee's Issues …………………………………………………3

Statement of Facts………………………………………………4

Argument………………………………………………10

Prayer…………………………………………………28

Certificate of Compliance…………………………………………………29

Certificate of Service……………………………………………………30

# INDEX OF AUTHORITIES

**Texas Supreme Court**

*In re Lipsky*, 460 S.W.3d 579 (Tex. 2015)………………………………………….10,11

*Mead v. Johnson Group, Inc.*, 615 S.W.2d 685 (Tex. 1981)…………………………17

**Texas Court of Appeals**

*Allan v. Nerseova*, 2010 Tex. App. LEXIS 718 (Tex. App. – Dallas 2010, no pet.)..12

*Cooper v. Steen*, 318 S.W.2d 750 (Tex. App. – Dallas 1958, no writ)………………17

*Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318
(Tex. App. – Fort Worth 1998, pet. denied)……………………………….....16,17

*Fleming & Assoc., L.L.P. v. Kirklin*, 479 S.W.3d 458
(Tex. App. – Houston [14th Dist.] 2015, pet. denied) (per curiam)……………26,27

*Paulsen v. Yarrell*, 455 S.W.3d 192
(Tex. App. – Houston [1st Dist.] 2014, no pet.)…………………………...26,27

*Pelt v. State Board of Ins.*, 802 S.W.2d 822 (Tex. App. – Austin 1990, no writ)…..25

*RRR Farms v. American Horse Protection Ass'n, Inc.*, 957 S.W.2d 121
(Tex. App. – Houston [14th Dist.] 1997, pet. denied)……………………………...17

*Scott v. Sebree*, 986 S.W.2d 364 (Tex. App. – Austin 1999, no pet.)………………11

*Serafine v. Blunt*, 466 S.W.3d 352
(Tex. App. – Austin 2015, no pet.)...................................10,11,17,18,19,20,22,23,24

*Ski Masters of Texas, L.L.C. v. Heinemeyer*, 269 S.W.3d 662
(Tex. App. – San Antonio 2008, no pet.)……………………………………….12

*Sloat v. Rathbun*, 2015 WL 6830927, 2015 Tex. App. LEXIS 11537
(Tex. App. – Austin 2015, pet. dism'd)……………………………………...10,11

*Trane US, Inc. v. Sublett*, 2016 Tex. App. LEXIS 10723
(Tex. App. – Amarillo 2016, n.p.h.) (per curiam)…………………………..26,27,28

**Texas Statutes**

TEX. CIV. PRAC. & REM. CODE §§27.001-27.011………………………………….1
TEX. CIV. PRAC. & REM. CODE §27.002………………………………………..22,24
TEX. CIV. PRAC. & REM. CODE §27.003………………………………………….27
TEX. CIV. PRAC. & REM. CODE §27.006………………………………………...22,24
TEX. CIV. PRAC. & REM. CODE §27.009……………………………………..25,26,27
TEX. CIV. PRAC. & REM. CODE §27.008(b)…………………………….............28
TEX. CIV. PRAC. & REM. CODE §51.014(a)(12)……………………….............28

TEX. PROP. CODE § 82.051……………………………………………………...11

# APPELLEE'S STATEMENT OF THE CASE

*Nature of the case:*        Appellee Overlook at Lake Austin, L.P. ("Overlook") submitted requests to local governmental entities Travis County and the City of Austin, Texas to permit Overlook's construction and sale of townhomes on its land near Lake Austin Marina. Appellant Chris Peterson ("Mr. Peterson") and Appellants Robert Turner, Scott Reichardt and Pamela Reichardt (collectively "Intervenor Appellants"), are nearby property owners who sued "The Zoning & Platting Commission of the City of Austin, Texas" and the "Travis County Commissioners Court" to restrain their action on Overlook's requests and for other relief. Appellants, except Robert Turner, also sued Overlook to restrain it from commencing construction or site development work and for other relief. Appellant Chris Peterson subsequently sued and obtained a Temporary Restraining Order against the City of Austin.

In response to Appellants' original petitions, Overlook filed counterclaims: against Mr. Peterson for breach of contract and conspiracy; against Appellant Robert Turner ("Mr. Turner") for tortious interference with contract and conspiracy; and against Appellants Scott Reichardt and Pamela Reichardt (the "Reichardts") for tortious interference with contract. Appellants filed motions to dismiss Overlook's counterclaims under TEX. CIV. PRAC. & REM. CODE §§ 27.001-27.011, known as the Texas Citizens Participation Act (hereinafter "TCPA"). Appellants appealed the trial court's interlocutory order on their motions to dismiss.

*Interlocutory order signed by:*        The Hon. Orlinda Naranjo

*Trial Court:*        201st Judicial District Court, Travis County, Texas

1

*Interlocutory disposition by Trial Court:* The trial court, Judge Naranjo presiding, heard Mr. Peterson's request for temporary injunction on July 18, 2016. 2 RR; 4RR.[1] The trial court, Judge Naranjo presiding, heard Appellants' motions to dismiss on July 21, 2016. 3 RR. On August 9, 2016, Judge Naranjo signed an interlocutory order entitled ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF CHRIS PETERSON AND INTERVENORS ROBERT TURNER, SCOTT REICHARDT, AND PAMELA REICHARDT'S MOTIONS TO DISMISS CLAIMS OF DEFENDANT OVERLOOK AT LAKE AUSTIN, L.P. PURSUANT TO CHAPTER 27 OF THE TEXAS CIVIL PRACTICE & REMEDIES CODE, that:

- Granted the motions to dismiss of Mr. Peterson and Mr. Turner as to Overlook's conspiracy claims;

- Dismissed Overlook's conspiracy claims with prejudice;

- Denied the motions to dismiss of Intervenor Appellants as to Overlook's tortious interference with contract claims.

- Ordered the parties to submit evidence of their fees and costs by affidavit and counter-affidavits within 14 days of the date of the Order or set a hearing on the limited issue of attorney's fees;

- Denied all relief not expressly granted.

("Order") CR 2355-2357.[2]

---

[1] The four-volume Reporter's Record, filed September 6, 2016, is hereinafter referenced as "RR". Exhibits from the July 18 hearing on Mr. Peterson's requested temporary injunction (2 RR) are contained within Volume 4 of the Reporter's Record. Such exhibits consist of Mr. Peterson's Exhibits 1-20 (hereinafter designated as 4 RR PX[#]) and Overlook's Exhibit 1 (hereinafter designated as 4 RR DX1).

[2] The Clerk's Record, Volume 1 of 1, filed September 19, 2016, hereinafter referenced as "CR".

# APPELLEE'S ISSUES

1. The Order properly denied Chris Peterson's motion to dismiss Overlook's breach of contract claim. [*responding to Chris Peterson's Issues II and III*]

   a. Overlook's existing contractual agreement with Mr. Peterson
   b. Overlook's performance and Mr. Peterson's breaches
   c. Overlook's lost sales caused by Mr. Peterson's breaches
   d. Mr. Peterson's lawsuit for relief against non-existent and immune local governmental entities, at the time of Overlook's counterclaim, was "sham" petitioning that overcame TCPA § 27.005(b)'s foundational requirement and removed the cloak of constitutional privilege.

2. The Order properly denied the Intervenor Appellants' motion to dismiss Overlook's tortious interference with contract claim. [*responding to the Reichardts' Point of Error 1. II. and to Robert Turner's Point of Error 2*]

3. This Court lacks jurisdiction to review the trial court's interlocutory rulings on requested attorney's fees, costs, and sanctions. [*responding to Chris Peterson's Issue IV and to Reichardts'/Turner's Point of Error 3*]

## STATEMENT OF FACTS

Lake Austin Condominiums, L.P. owned two adjacent tracts of land totaling approximately 3.094 acres ("Lots 87A and 87B") near Lake Austin Marina in Austin, Travis County, Texas. CR 577; 4 RR PX 3, 15, 18. Lake Austin Condominiums, L.P. recorded its Restrictive Covenant Regarding Unified Development and Maintenance of Drainage Facilities which indicated the intent to consider, for purposes of site plan review, modification, or approval by the City of Austin, Lots 87A and 87B as a "unified development/single site" (hereinafter "Unified Development Agreement" or "UDA"). 4 RR PX 3. By a 2007 written and recorded Declaration of Covenants, Conditions and Restrictions for Las Colinas at Lake Austin Condominiums ("Declaration"), Declarant Lake Austin Condominiums, L.P. created Las Colinas at Lake Austin Condominiums ("Las Colinas Condos") consisting of eight residential condominium units and common elements within a designated 0.807 acre portion along the southern portions of Lots 87A and 87B. CR 576-577, 613-686; 4 RR PX 15. Declarant Lake Austin Condominiums, L.P. did not "partition" nor replat that 0.807 acre portion as a new tract separate from Lots 87A and 87B.

In the Declaration, Declarant Lake Austin Condominiums, L.P. reserved certain rights to the Declarant, including rights regarding development of the

northern portions of Lots 87A and 87B, identified as "Additional Phases":

## ARTICLE VIII. <u>ADDITIONAL PHASES</u>

8.1 RESERVATION OF RIGHT OF MERGER AND ANNEXATION AND RESERVATION OF EASEMENTS TO DECLARANT

...

(b)     Declarant reserves the right, at any time and from time to time, without requesting or receiving the assents of any Owner or any Mortgagee, to resubdivide, amend the subdivision plat covering the Property, modify, alter, or otherwise change the legal or other status or configuration of the Additional Phases, or the Property to grant easements and to otherwise take such action as may be deemed necessary by the Declarant to satisfactorily expand the Project. Each Owner by taking title to a Unit expressly waives the right to object to any action by Declarant to rezone, replat or otherwise alter the entitlement status of the Additional Phases.  Declarant may also plat, resubdivide or rezone the Property on any portion thereof or the land comprising the Additional Phases as necessary to entitle the Additional Phases in order for it or any portion thereof to be owned, held and/or developed separate and apart from the Project. Declarant expressly reserves an easement over, across and through the Common Elements for the purpose of ingress and egress to and from, and to facilitate in any manner required by Declarant the construction and sale of the Additional Units to be annexed. Declarant also expressly reserves, for the benefit of all present and future Owners of all or any portion of the Additional Phases, an easement over, across and through the Common Elements, including without limitation, the Property, for the purpose of ingress and egress, extension of utilities or any other purpose necessary to use and develop the Additional Phases as a project separate and apart from the Project, such as a different condominium project or a single-family subdivision, if so desired by such Owners or the Declarant. Each Owner hereby appoints Declarant as its attorney-in-fact for the purpose of effecting the provisions of this Section 8.1 and the power hereby granted to the Declarant shall be, and is, a power coupled with an interest and is irrevocable.

CR 648-649, 681-686. The Declaration also reserved the right of the Declarant to designate "one or more Successor Declarants for all purposes and all of the Property…. [and] a Successor Declarant … may designate further Successor Declarants." CR 663. The Declaration states Declarant's intent for the "Declaration to be perpetual." CR 657.

Overlook acquired the "Additional Phases" land, i.e. northern portions of Lots 87A and 87B consisting of approximately 2.288 acres, from Lake Austin Condominiums, L.P.'s successor in title Graham Mortgage Corporation by October 7, 2014 Special Warranty Deed with Vendor's Lien. CR 2308-2315. Overlook succeeded Lake Austin Condominiums, L.P. as Declarant of the Declaration by a series of Designations of Successor Declarants beginning with: Declarant Lake Austin Condominiums, L.P.'s Designation of Successor Declarant; the Successor Declarant GMC Lake Austin, Inc.'s Designation of Second Successor Declarant; and Second Successor Declarant Graham Mortgage Corporation's Designation of Third Successor Declarant. CR 2308, 2316-2326.

Overlook seeks to develop and build a new condominium on Overlook's "Additional Phases" land, in accord with the UDA and with Overlook's Declarant rights reserved by the Declaration. CR 2308. Since acquiring that land, Overlook has been submitting documents, including a Resubdivision of Lots 87A-87B plat, to

Travis County and the City of Austin to obtain their approvals for Overlook's development and construction of this condominium to be called "Overlook at Lake Austin." CR 2308. Overlook expected to obtain such approvals and begin construction of new condominium units by November 2015. CR 2308. Overlook entered into contracts with individuals and families for construction and conveyance of 10 condominium units. CR 2308, 2327-2351. Overlook entered into a $1.3 million New Residence Construction Contract with Lance and Erin Ramsey, including their deposit of $55,000 earnest money, and agreed to complete their condominium unit within 14 months of beginning foundation work. CR 2327-2338. Overlook entered into a $1.2 million New Residence Construction Contract with John and Caroline Byrne, including their deposit of $60,000 earnest money, and agreed to complete their condominium unit within 14 months of beginning foundation work. CR 2340-2350.

In August 2015, Mr. Peterson, a Las Colinas Condos unit owner, objected to the City of Austin's consideration and approval of Overlook's proposed development and construction on Overlook's real property. CR 2309; 4 RR PX4. The Zoning and Platting Commission of the City of Austin ("ZAP") approved Overlook's submitted Resubdivision of Lots 87A-87B plat. CR 2309. The Travis County Commissioners Court ("Commissioners Court") scheduled a November

17, 2016 public hearing to consider Overlook's submitted Resubdivision of Lots 87A-87B plat and public comments thereon. CR 700.

On November 16, 2016, Mr. Peterson filed the underlying suit for Temporary Restraining Order and Temporary Injunction against: ZAP; Commissioners Court; and Overlook. CR 36. Despite Mr. Peterson's concern over governmental immunity, he specifically requested an immediate temporary restraining order against Commissioners Court and an injunction directing ZAP to rescind its approval of Overlook's Resubdivision of Lots 87A-87B plat to "prevent this three pronged attack." CR 38, 157. Appellants all claim an agreement, in court during the November 16 temporary restraining order hearing, between Mr. Peterson and Travis County that the Commissioners Court would take no further action to approve Overlook's subdivision Application until a final decision on the merits of this case is issued.[3]

That same day, Robert Turner, Scott Reichardt and Pamela Reichardt filed their Petition in Intervention in the underlying suit, similarly requesting: writ of mandamus against ZAP to rescind its approval of Overlook's Resubdivision of Lots

---

[3] Brief for Appellant Christopher Peterson, at 9; Brief of Appellants Robert Turner, Scott Reichardt, and Pamela Reichardt, at x. Neither the Clerk's Record nor the Reporter's Record shows such agreement. Overlook does not dispute that the Commissioners Court has since declined to consider Overlook's submitted plat. CR 2309.

87A-87B plat; and writ of mandamus against Commissioners Court to defer its consideration of Overlook's Resubdivision of Lots 87A-87B plat. CR 11-35.

The Commissioners Court and ZAP responded to Appellant's claims in the underlying suit by asserting sovereign immunity, official immunity, governmental immunity and failure to provide pre-suit notices of their claims as required by law. CR 163-169, 170-173, 183-187. Mr. Peterson followed by suing the City of Austin, elected officials (Travis County Judge, County Commissioners) and ZAP officials. CR 415-542. Mr. Turner and the Reichardts followed suit against ZAP officials. CR 386-414. Overlook responded to Appellants' claims in their original petitions by asserting: claims against Mr. Peterson for breach of contract and conspiracy; claims against Mr. Turner for tortious interference with contract and conspiracy; and claims against the Reichardts for tortious interference with contract. CR 276-385. Without Commissioners Court and further ZAP approvals, delayed by the actions of Mr. Peterson, Mr. Turner, and the Reichardts, Overlook's development and construction of the Overlook at Lake Austin Condominiums was delayed. CR 2309. The Ramseys terminated the $1.3 million contract for their condominium unit and Overlook released their $55,000 earnest money. CR 31. The Byrnes terminated the $1.2 million contract for their condominium unit and Overlook released their $60,000 earnest money. CR 2351.

# ARGUMENT

## Standard of Review

When reviewing a trial court's order on a TCPA motion to dismiss, this Court exercises de novo review of the trial court's determination whether the nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims. *See Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App. – Austin 2015, no pet.). A prima facie standard generally requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. *Id*. The term "clear and specific evidence" refers to the quality of evidence required to satisfy the nonmovant's minimal factual burden. *Id*.

"Clear and specific evidence" is not limited to direct evidence and includes circumstantial evidence. *See In re Lipsky*, 460 S.W.3d 579, 588-589 (Tex. 2015) ("Circumstantial evidence may be used to prove one's case-in-chief or to defeat a motion for directed verdict, and so it would be odd to deny its use here to defeat a preliminary motion to dismiss under the TCPA."). "Clear and specific evidence" includes the pleadings, affidavits, or other evidence. *See Sloat v. Rathbun*, 2015 WL 6830927, 2015 Tex. App. LEXIS 11537, *7 (Tex. App. – Austin 2015, pet. dism'd).

The pleadings, affidavits, or other evidence are viewed in the light most favorable to the non-movant and prevailing party in the trial court. *See id.* at \*8.

Here, this Court should view the pleadings, affidavits, or other evidence in the light most favorable to Overlook and determine whether Overlook marshaled the minimum quantity of "clear and specific evidence", including circumstantial evidence, necessary to support a rational inference establishing each essential element of: Overlook's breach of contract claim against Peterson; and Overlook's tortious interference with contract claim against the Reichardts and against Turner. *See Lipsky* at 588-589; *Serafine* at 358; *Sloat* at \*7-\*8.

1. **The Order properly denied Chris Peterson's motion to dismiss Overlook's breach of contract claim.** [*responding to Chris Peterson's Issues II and III*]

The essential elements of a breach of contract claim are: a valid contract existed, plaintiff performed, defendant breached, and that plaintiff suffered resulting damages. *Scott v. Sebree*, 986 S.W.2d 364, 372 (Tex. App. – Austin 1999, no pet.).

a. **Overlook's existing contractual agreement with Mr. Peterson**

Mr. Peterson owns a condominium unit within the Las Colinas at Lake Austin Condominiums within a condominium regime created by the Declaration of Covenants, Conditions and Restrictions for Las Colinas at Lake Austin Condominiums ("Declaration"). *See* Tex. Prop. Code § 82.051. CR 576, 613-

686; 2 RR 68-69; 4 RR (Plaintiff's Exhibits 1, 2). By accepting a deed to a condominium unit, the unit owner accepts the terms, conditions, and restrictions in the declaration. *Allan v. Nerseova*, 2010 Tex. App. LEXIS 718, *8 (Tex. App. – Dallas 2010, no pet.). Restrictions in a condominium declaration form a contract between the parties. *Id. See also Ski Masters of Texas, L.L.C. v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App. – San Antonio 2008, no pet.) (restrictive covenant is a contractual agreement between the seller and the purchaser of real property, enforceable by those in direct privity of estate with the contracting parties).

Overlook's privity of estate with Lake Austin Condominiums, L.P., the original owner and Declarant of Las Colinas at Lake Austin Condominiums is shown by the Affidavit of James G. Moore, accompanying warranty deeds and series of designations of Successor Declarants. CR 577, 619, 2308-2326. Overlook, as successor Declarant, and Mr. Peterson, as a Unit Owner, are parties to these restrictions and contractual agreements within the Declaration:

> 2.9    USE AND OCCUPANCY RESTRICTIONS
> …
> (c)    *Use Restrictions*. Without limiting the generality of the foregoing provisions of this Section 2.9, use of the Project by the Unit Owners shall be subject to the terms and conditions set forth in the Community Policies and the following restrictions:
>
> (1)    <u>Declarant Rights</u>. In order that Declarant may develop and sell the Project, no Unit Owner nor the Association shall do anything to interfere with special Declarant rights contained in

Appendix A or any other rights reserved by Declarant as set forth herein.

...

8.1 RESERVATION OF RIGHT OF MERGER AND ANNEXATION AND RESERVATION OF EASEMENTS TO DECLARANT

...

(b) Declarant reserves the right, at any time and from time to time, without requesting or receiving the assents of any Owner or any Mortgagee, to resubdivide, amend the subdivision plat covering the Property, modify, alter, or otherwise change the legal or other status or configuration of the Additional Phases, or the Property to grant easements and to otherwise take such action as may be deemed necessary by the Declarant to satisfactorily expand the Project. Each Owner by taking title to a Unit expressly waives the right to object to any action by Declarant to rezone, replat or otherwise alter the entitlement status of the Additional Phases. Declarant may also plat, resubdivide or rezone the Property on any portion thereof or the land comprising the Additional Phases as necessary to entitle the Additional Phases in order for it or any portion thereof to be owned, held and/or developed separate and apart from the Project. Declarant expressly reserves an easement over, across and through the Common Elements for the purpose of ingress and egress to and from, and to facilitate in any manner required by Declarant the construction and sale of the Additional Units to be annexed. Declarant also expressly reserves, for the benefit of all present and future Owners of all or any portion of the Additional Phases, an easement over, across and through the Common Elements, including without limitation, the Property, for the purpose of ingress and egress, extension of utilities or any other purpose necessary to use and develop the Additional Phases as a project separate and apart from the Project, such as a different condominium project or a single-family subdivision, if so desired by such Owners or the Declarant. Each Owner hereby appoints Declarant as its attorney-in-fact for the purpose of effecting the provisions of this Section 8.1 and the power hereby granted to the Declarant shall be, and is, a power coupled with an interest and is irrevocable.

CR 278-279, 298-299, 322-323, 624-625, 648-649.

### b. Overlook's performance and Mr. Peterson's breaches

When Overlook performed its reserved rights to resubdivide and amend the subdivision plat covering the Property, at any time and without any requirement for a unit owner's assent, Mr. Peterson first interfered by raising his lack of consent. 4 RR PX4. Instead of appearing before the Commissioners Court's public hearing process to provide his comments on their consideration of Overlook's Resubdivision of Lots 87A-87B plat, Mr. Peterson interfered with Overlook's reserved rights by suing Commissioners Court and ZAP for wrongful injunctive relief to restrain their consideration. Mr. Peterson interfered with Overlook's reserved rights by restraining Commissioners Court, by agreement, "to take no further action to approve the subdivision application." Mr. Peterson interfered with Overlook's reserved rights by suing the City of Austin and its official Rodney Gonzales for and obtaining a wrongful Temporary Restraining Order to restrain their processing of Overlook's submitted Site Plan Application. CR 2002-2137, 2139-2143. Mr. Peterson interfered with Overlook's reserved rights by obtaining the City of Austin's agreement that "the City will not approve or release the Site Plan Revision." CR 2352-2354.

Mr. Peterson's continued interference shows multiple breaches of his contractual agreement with Declarant Overlook, created by the Declaration, that he would not do "anything to interfere with … any other rights reserved by [Overlook] as set forth herein" including its rights: to resubdivide; to amend the Property's subdivision plat; to modify/alter/change the legal or other status of the Additional Phases; to plat, resubdivide or rezone the Property on any portion thereof; to plat, resubdivide or rezone the Additional Phases as necessary to entitle that land or any portion for separate ownership, holding or development. Mr. Peterson's Original Petition breached his express waiver of his right to object to any action by Overlook to rezone, replat or otherwise alter the entitlement status of the Additional Phases. Mr. Peterson's sworn statement "None of the defendants in this case are my agents or attorneys in fact" breached his appointment of Overlook as his attorney-in-fact. CR 156.

### c. Overlook's lost sales caused by Mr. Peterson's breaches

Overlook paid over $1.6 million for the "Additional Phases" land. CR 2311-2315. Overlook intended to develop, build and convey additional condominium units on that land, and commence construction by November 2015. CR 2308. Overlook obtained a Contract of Sale with Mr. and Mrs. Ramsey in which they agreed to pay $1.3 million for a unit to be completed by January 2017, within 14

months of beginning construction. CR 2327-2335. The Ramseys deposited $55,000 earnest money. CR 2337. Overlook obtained a Contract of Sale with Mr. and Mrs. Byrne in which they agreed to pay $1.2 million for a unit to be completed by January 2017, within 14 months of beginning construction. CR 2340-2346. The Byrnes deposited $60,000 earnest money. CR 2348. Overlook could not commence construction in November 2015 and cannot commence construction while: the Commissioners Court declines to take further action to approve Overlook's subdivision application under its agreement with Mr. Peterson; and the City of Austin will not approve or release Overlook's Site Plan Revision under its agreement with Mr. Peterson. CR 2352-2354. The Ramseys and the Byrnes terminated their contracts for condominium units and received their earnest money back. CR 2338, 2351.

By halting local governmental processes to consider and approve Overlook's planned development, Peterson halted Overlook's commencement of construction in November 2015. Without such consideration and approval, Overlook could not build condominium units promised to be completed by January 2017 for the Ramseys and the Byrnes. As a result, the Ramseys and the Byrnes terminated their Contracts of Sale with Overlook totaling $2.5 million. Lost sales are recognized reasonably foreseeable damages. *See Duncan Land & Exploration, Inc. v. Littlepage*,

984 S.W.2d 318, 333 (Tex. App. – Fort Worth 1998, pet. denied) (slander of title); *Cooper v. Steen*, 318 S.W.2d 750, 756 (Tex. App. – Dallas 1958, no writ) (intentional invasion of property rights). In an action for breach of contract, actual damages may be recovered when the loss is the natural, probable and foreseeable consequences of the defendant's conduct. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981).

d. **Mr. Peterson's lawsuit for relief against non-existent and immune local governmental entities, at the time of Overlook's counterclaim, was "sham" petitioning that overcame TCPA § 27.005(b)'s foundational requirement and removed the cloak of constitutional privilege.**

Mr. Peterson's asserted First Amendment claims, whether offered to prove the statutory foundation to file a TCPA motion to dismiss or to prove the affirmative defense of absolute privilege to Overlook's claims, does not overcome the "sham" exception or "sham" petitioning concept. *See RRR Farms v. American Horse Protection Ass'n, Inc.*, 957 S.W.2d 121, 128 (Tex. App. – Houston [14th Dist.] 1997, pet. denied) (sham exception to privilege provided by the *Noerr-Pennington* doctrine); *See Serafine v. Blunt*, 466 S.W.3d 352, 364-395 (Tex. App. – Austin 2015, no pet.) (Pemberton, J., concurring) (district court's order denying TCPA motion could be affirmed on an implied finding or conclusion that the challenged lawsuit is not protected as the exercise of the right to petition because it is a sham).

Overlook did not expressly use the word "sham" in the trial court. Overlook asserts that its trial court arguments and explanation regarding "petition activity in bad faith and for a wrongful purpose" raised the "sham" issue:

> Plaintiff has conducted allegedly protected free speech and petition activity in bad faith and for a wrongful purpose. Plaintiff's requests for injunctions and use of this court's Temporary Restraining Order issued June 17, 2016 against immune governmental entities show a malicious use of the court, without subject matter jurisdiction to enjoin governmental entities and public officials, to frustrate Overlook's development of its real property. Plaintiff's breach of contract and bad faith conduct is the basis for Overlook's claims.

> [and]

> Intervenors have conducted their allegedly protected free speech and petition activity in bad faith and for a wrongful purpose. Intervenors' requests for injunctions against immune governmental entities show a malicious use of the court, without subject matter jurisdiction to enjoin governmental entities and public officials, to frustrate Overlook's development of its real property. Intervenors' bad faith conduct is the basis for Overlook's claims.

CR 2282, 2295. These arguments follow the basis for "sham" petitioning, i.e. those situations in which persons use the governmental process – as opposed to the outcome of the process – to harass, increase costs for, or otherwise harm a rival as an end in itself. *See Serafine,* at 366.

When Mr. Peterson first filed suit on November 16, 2015 against ZAP, Commissioners Court, and Overlook, he pursued prior restraint injunctive relief against Commissioners Court only. Brief of Appellant Christopher Peterson, at 9;

18

CR 36 (Plaintiff's Original Petition and Application for Temporary Restraining Order and Temporary Injunction); CR 158-161 (proposed TRO against Commissioners Court only). That same day, Mr. Peterson used the Temporary Restraining Order ("TRO") process, as opposed to an outcome of the process, to obtain his desired result, specifically the "Travis County Commissioners Court agree[ment] to take no further action to approve [Overlook's] subdivision Application until a final decision on the merits of this case is issued." Brief of Appellant Christopher Peterson, at 9. That harmed Overlook as an end in itself.[4]

In the context of litigation, "sham" petitioning requires a two-part analysis: (1) the lawsuit must be objectively baseless, i.e. no reasonable litigant could realistically expect success on the merits; and (2) only in the event the challenged litigation is objectively meritless, the court determines whether the baseless lawsuit conceals an attempt to harm a rival directly through the process itself as opposed to the outcome. *See id.*

On March 1, 2016, Overlook filed its counterclaims made the basis of Mr. Peterson's TCPA Motion to Dismiss. CR 276-385. Mr. Peterson's suit only named ZAP, Commissioners Court, and Overlook. At that time, ZAP and the Commissioners Court each possessed multiple valid defenses to suit, including but

---

[4] See supra p. 16 herein.

not limited to: sovereign/official/derivative/governmental immunity from suit; Commissioners Court is not a legal entity capable of being sued; and ZAP, a department of the City of Austin, is not a justiciable entity. CR 163-169 (Travis County Commissioners Court's Original Answer and Verified Denial), CR 170-173 (Defendant The Zoning and Platting Commission of the City of Austin's Original Answer and Special Exceptions).[5] Contrary to Mr. Peterson's jurisdictional allegations, ZAP and Commissioners Court were not "political subdivisions or entities of this state" and the trial court completely lacked subject matter jurisdiction to grant his requested relief against ZAP and Commissioners Court. CR 37. At that time, Mr. Peterson's lawsuit against ZAP and Commissioners Court was objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. *See id.*

Mr. Peterson's Original Petition against Overlook was not objectively baseless, since Overlook is a valid legal entity without sovereign/governmental immunity. But Mr. Peterson did not pursue injunctive relief against Overlook, despite his subjectively breathless portrayal of Overlook as the evil mastermind:

> 8.     Overlook itself has pushed and prodded by whatever means at its disposal to not only persuade ZAP and the

---

[5] Overlook wholly adopts herein the asserted defenses, arguments and authorities contained within Commissioners Court's original answer and ZAP's original answer to show that Mr. Peterson's Original Petition against Commissioners Court and ZAP was objectively baseless.

> Commissioners Court to turn a blind eye to the unfolding injustice, but is itself double-timing its pursuit of approval to expedite the trampling of Plaintiff's valuable property rights by, among other things, unlawfully hi-jacking long expired special declarant rights of a now defunct past developer and administratively converting Plaintiffs' (and others') valuable property rights all as part of Overlook's ill-fated and dogged pursuit of self-interest without any regard to the rights of others along the way.

CR 38. He avoided an outcome based squarely on the parties' Declaration rights. Rather, he used his objectively baseless claims against the governmental entities and the TRO process to harm Overlook by barring its use of the Commissioners Court's process for evaluating Overlook's proposed development. Overlook's claims asserted March 1, 2016 against Mr. Peterson are based on that conduct, which also breached his contractual agreements in the Declaration: "Plaintiff and Intervenors have sought to use the court system for delay by causing confusion." CR 277.

In June, Mr. Peterson again used his objectively baseless claims against a governmental entity and the TRO process to harm Overlook. CR 2138. Again, despite lack of jurisdiction over an immune governmental entity, he requested and obtained a wrongful TRO against the City of Austin enjoining it from "accepting, releasing or approving any site plan application … that includes or in any way affects any portion of … Lots 87A and 87B." CR 2142. Again, he did not pursue requested injunctive relief against Overlook, but used speculative and conclusory

opinion testimony from Pamela Madere (counsel for Intervenor Appellants) to allege his "imminent" harm and halt the City of Austin's process for evaluating Overlook's proposed development. CR 2146, 2148-2150, 2190.

Mr. Peterson's "sham" petitioning, as of Overlook's filing of its March 1, 2016 counterclaims, is shown by: (1) his claims against Commissioners Court and ZAP were objectively baseless, i.e. no reasonable litigant could realistically expect success on the merits; and (2) he used his baseless claims and the TRO process against Commissioners Court and ZAP, and this TCPA process, to harm Overlook. *See Serafine*, at 365-366, 370-371 (party's TCPA motion to dismiss is potentially subject to an opposing party's TCPA motion to dismiss the first TCPA motion). Mr. Peterson's "sham" petitioning overcame his claim that Overlook's counterclaim for breach of contract was based on, relates to, or is in response to his *constitutional* exercise of his rights of free speech, petition, or association. TCPA §§ 27.002; 27.006(b). *See Serafine*, at 380-383. His motion to dismiss was improper and the trial court's Order properly denied his motion to dismiss Overlook's counterclaim for breach of contract. Likewise, his "sham" petitioning defeated his defense of absolute privilege against Overlook's counterclaim for breach of contract.

**2. The Order properly denied the Intervenor Appellants' motion to dismiss Overlook's tortious interference with contract claim.** [*responding to the Reichardts' Point of Error 1. II. and to Robert Turner's Point of Error 2*]

Intervenor Appellants also sued ZAP, Commissioners Court, and Overlook by filing their Petition in Intervention on November 16, 2016. CR 11. Intervenor Appellants' Petition in Intervention requested mandamus relief against ZAP "to rescind its approval of [Overlook's] subdivision plat" and prior restraint mandamus relief against Commissioners Court "to defer consideration of [Overlook's] re-subdivision plat." CR 17-18. At that time, ZAP and the Commissioners Court each possessed multiple valid defenses to Intervenors' suit, including but not limited to: sovereign/official/derivative/governmental immunity from suit; Commissioners Court is not a legal entity capable of being sued; and ZAP, a department of the City of Austin, is not a justiciable entity. CR 163-169 (Travis County Commissioners Court's Original Answer and Verified Denial), CR 183-187 (Defendant The Zoning and Platting Commission of the City of Austin's Original Answer and Special Exceptions to Intervenors Robert Turner, Scott and Pamela Reichardt's Petition in Intervention).[6] Contrary to Intervenor Appellants' allegation, Commissioners Court is not "a political subdivision of Travis County."

---

[6] Overlook wholly adopts herein the asserted defenses, arguments and authorities contained within Commissioners Court's original answer and ZAP's original answer to show that Intervenor Appellants' Petition in Intervention against Commissioners Court and ZAP was objectively baseless. *See Serafine,* at 366.

CR 12. They alleged no basis for the trial court's jurisdiction over ZAP and Commissioners Court. CR 11-19. At that time, the trial court completely lacked subject matter jurisdiction to grant their requested relief against ZAP and Commissioners Court. At that time, Intervenor Appellants' Petition in Intervention against ZAP and Commissioners Court was objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. *See Serafine,* at 366.

Overlook's claims asserted March 1, 2016 against Intervenor Appellants are based on their "sham" petitioning. "Plaintiff and Intervenors have sought to use the court system for delay by causing confusion." CR 277. Since then, Intervenor Appellants' failure to directly pursue their originally requested relief against anyone, while instead pursuing relief against Overlook only under the TCPA, indicates Intervenors' purpose only of harming Overlook through the collateral effects of the litigation process. *See Serafine*, at 383.

Intervenor Appellants' "sham" petitioning, as of Overlook's filing of its March 1, 2016 counterclaims, overcomes their claim that Overlook's counterclaims are based on, relates to, or is in response to their *constitutional* exercise of their rights of free speech, petition, or association. TCPA §§ 27.002; 27.006(b). *See Serafine*, at 380-383. Their TCPA motion to dismiss was improper and the trial

court's Order properly denied Intervenor Appellants' motion to dismiss Overlook's counterclaim for their tortious interference with contract.

**3. This Court lacks jurisdiction to review the trial court's interlocutory rulings on requested attorney's fees, costs, and sanctions.** [*responding to Chris Peterson's Issue IV and to Reichardts'/Turner's Point of Error 3*]

A necessary prerequisite to invoking the jurisdiction of the court of appeals is that, in the absence of a statute to the contrary, the appeal must be from a final, appealable judgment. *Pelt v. State Board of Ins.*, 802 S.W.2d 822, 826 (Tex. App. – Austin 1990, no writ). "Thus, we have no jurisdiction over an appeal from a trial court's interlocutory ruling unless such order is specifically made appealable by statute." *Id.* Here, the trial court's Order contains interlocutory express rulings that:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, in accordance with Texas Civil Practice and Remedies Code Section 27.009(1), Movants are entitled to recover their attorneys' fees and costs in bringing their Motions to Dismiss as to Overlook's claims for conspiracy The parties are ordered to submit evidence of their fees and costs by affidavit and counter-affidavit within 14 days of the date of this Order, or set the case for hearing on the limited issue of attorney's fees. Movants shall be awarded such other and further relief to which they may be justly entitled, at law or in equity.

CR 2355-2356. In their Briefs, Appellants asserted the trial court's error in: failing to award attorney's fees and costs of court under TCPA § 27.009. Peterson Brief, at 44-46; Intervenors' Brief, at 34-35. Mr. Peterson also asserted the trial court's

error in failing to award sanctions against Overlook under TPCA § 27.009. Peterson Brief, at 44-46. This Court lacks jurisdiction over an appeal from these interlocutory rulings. *See Paulsen v. Yarrell*, 455 S.W.3d 192 (Tex. App. – Houston [1st Dist.] 2014, no pet.) (dismissing appeal for want of jurisdiction of interlocutory order that granted TCPA motion to dismiss and denied request for attorney's fees); *Fleming & Assoc., L.L.P. v. Kirklin*, 479 S.W.3d 458 (Tex. App. – Houston [14th Dist.] 2015, pet. denied) (per curiam) (dismissing appeal for want of jurisdiction of interlocutory orders that granted TCPA motions to dismiss and reserved determination of attorney's fees and sanctions); *Trane US, Inc. v. Sublett*, 2016 Tex. App. LEXIS 10723 (Tex. App. – Amarillo 2016, n.p.h.) (per curiam) (dismissing appeal for want of jurisdiction of interlocutory order that granted TCPA motion to dismiss and directed submittal of a request for attorney's fees and sanctions).

In *Paulsen*, defendant Ellen Yarrell filed a TCPA motion to dismiss plaintiff James Paulsen's claims for defamation and tortious interference. *Paulsen*, at 194. Paulsen's filed his own TCPA motion to dismiss Yarrell's motion to dismiss. *Id*. The trial court denied Yarrell's TCPA motion, granted Paulsen's TCPA motion, and denied Paulsen's request for attorney's fees and court costs under the TCPA. *Id*. at 195. Paulsen appealed the trial court's order denying his attorney's fees

ancillary to granting his motion to dismiss filed under TCPA § 27.003. *Id.* The First Court of Appeals declined to exercise jurisdiction over Paulsen's interlocutory appeal, holding that "the aspect of Paulsen's motion that was denied – the request for attorney's fees – was a distinct interlocutory ruling that did not deny the 'motion to dismiss filed under Section 27.003,' but instead it denied a request for fees as authorized by a separate provision, Section 27.009." *Id.* at 196.

In *Fleming*, the trial court granted movants' TCPA motion to dismiss by one order (including a handwritten notation "Attorneys' fees & sanctions will be considered at a later date") and denied movants' request for attorneys' fees and sanctions by a subsequent separate order. *See Fleming*, at 460. Upon appeal of both orders, the Fourteenth Court of Appeals declined to exercise jurisdiction. *Id.* at 460-461 (no statute explicitly provides for an interlocutory appeal of an order that grants a TCPA motion).

Most recently, in *Trane US*, the Seventh Court of Appeals declined to exercise jurisdiction over an appeal of a trial court's order that granted movants' TCPA motion to dismiss, without resolving movants' request for attorney's fees and sanctions. The trial court signed an order that granted movants' TCPA motion to dismiss and directed movants' counsel to submit a request for attorney's fees and sanctions under the TCPA's section 27.009(a). *Trane US*, at *1-*2. Movants

filed their request and, while those issues remained pending in the trial court, movants appealed the trial court's order. *Id.* On appeal, that Court of Appeals said: "In light of section 51.014(a)(12), section 27.008(b) cannot be read to authorize an interlocutory appeal by either party of an order granting dismissal under section 27.003." *Id.* at *4.

Here, since the Order granted Appellants' motions to dismiss, albeit in part, no statute authorizes Appellants' interlocutory appeal of the trial court's resolution of Appellants' requests for attorney's fees and sanctions. Just as its sister courts that considered similar appeals, the Court lacks jurisdiction to review Appellants' requests for attorney's fees and sanctions.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellee Overlook at Lake Austin, L.P., subject to its MOTION TO DISMISS FOR LACK OF JURISDICTION, prays that this Court: affirm the trial court's August 9, 2016 Order; decline review of Appellants' requests for attorney's fees and sanctions for lack of jurisdiction; award Appellee its costs on appeal; and award Appellee such other relief to which it may be justly entitled.

Respectfully submitted,

Bush Rudnicki Shelton, P.C.


By:  /s/ *Carl J. Wilkerson*
      Carl J. Wilkerson
      State Bar No. 21478400
4025 Woodland Park Blvd., Suite 190
Arlington, Texas 76013
Telephone:  (817) 274-5992
Facsimile:   (817) 261-1671
Email:          cwilkerson@brstexas.com

Attorneys for Appellee
Overlook at Lake Austin, L.P.

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2007 and contains 6,384 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ *Carl J. Wilkerson*
Carl J. Wilkerson

## CERTIFICATE OF SERVICE

I certify that a copy of APPELLEE'S BRIEF, SUBJECT TO MOTION TO DISMISS FOR LACK OF JURISDICTION was served on the following parties through their counsel of record by electronic delivery on November 21, 2016:

Neal Meinzer
Neal.Meinzer@wallerlaw.com
Andrew Vickers
Andrew.Vickers@wallerlaw.com
Waller Lansden Dortch & Davis, LLP
100 Congress Ave., Suite 1800
Austin, Texas 78701
Telephone: (512) 685-6400
Facsimile: (512) 685-6417

ATTORNEYS FOR APPELLANT
CHRISTOPHER PETERSON

Pamela Madere
pmadere@coatsrose.com
Christopher Bradford
cbradford@coatsrose.com
Coats|Rose
901 South MoPac Expressway
Building 1, Suite 500
Austin, Texas 78746
Telephone: (512) 469-7987
Facsimile: (512) 469-9408

ATTORNEYS FOR APPELLANTS
ROBERT TURNER, SCOTT
REICHARDT, AND PAMELA
REICHARDT


/s/ *Carl J. Wilkerson*
Carl J. Wilkerson