**Opinion issued June 29, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00603-CV

————————————

## ERNST & YOUNG, LLP AND S.K. THAKKAR, Appellants

## V.

## RYAN, LLC, Appellee

---

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-35770**

---

## MEMORANDUM OPINION

Ernst & Young, LLP (EY) and S.K. Thakkar (collectively, appellants), moved

to dismiss Ryan, LLC's claim against EY for tortious interference with prospective

business relations under the Texas Citizens Participation Act (TCPA).[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. Ryan alleges that EY obtained information on Ryan's proprietary methods for calculating certain oil-and-gas-related tax credits when it audited some of Ryan's existing clients and then used that information to develop competing services and solicit Ryan's prospective clients. Appellants assert that EY's public audits involve communications and conduct that are protected exercises of free speech, association, and petitioning rights under the TCPA. They further assert that Ryan's tortious interference claim is based on or in response to that activity and therefore is subject to dismissal. The trial court disagreed and denied the motion to dismiss.

In three issues on appeal, appellants contend: (1) the trial court erred by concluding that the TCPA does not apply to Ryan's claim for tortious interference with prospective business relations, (2) the trial court misconstrued the TCPA's commercial speech exemption, and (3) Ryan failed to establish by clear and specific evidence a prima facie case for each essential element of tortious interference with prospective business relations.

---

[1] The Texas Legislature amended certain provisions of the TCPA in 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. The amendments became effective September 1, 2019. *Id.* §§ 11–12, 2019 Tex. Gen. Laws at 687. Because Ryan filed its original petition after the effective date of the amendments, this case is governed by the current statute.

Because we conclude that appellants did not satisfy their burden to show that Ryan's claim for tortious interference with prospective business relations falls within the TCPA's scope, we affirm.

## Background

EY is an accounting, audit, and professional services firm. Ryan is a competing accounting and tax consulting firm. Ryan provided consulting services to certain energy-sector companies whose financial statements EY audited. Ryan sued EY and its employee, Thakkar, alleging that EY obtained Ryan's proprietary information during EY's audits, including Ryan's "fee arrangements" and its methodologies for "federal royalty" and "severance tax" consulting services, and then used this information to interfere with and usurp potential contracts between Ryan and third parties for consulting engagements.

Ryan alleges that it "strategically developed [an] oil and gas severance tax and royalty practice group" that "serves most of the oil and gas companies in the Fortune 500" by "helping those companies realize savings and obtain refunds of state taxes and federal royalties." A principal in Ryan's severance tax and royalty group described, "[C]ompanies who extract oil and gas from federal land and waters pay royalties to the federal government, namely, the Office of Natural Resources Revenue ('ONRR'), which is in the Department of Interior." These companies may deduct from their royalty burden certain expenses incurred in transporting and

3

processing the oil and gas extracted. Ryan developed a proprietary methodology for identifying, calculating, and supporting allowable deductions to federal royalty payments that realizes savings for its clients. Ryan earns a portion of its clients' savings, typically on a contingency basis, as payment for its service.

Ryan also earns fees for severance-tax consulting services. A severance tax is a state charge imposed on the extraction, production, and sale of oil and gas. As Ryan explained, companies that pay severance taxes can deduct certain expenses, like transportation and operation costs. "Tax-services companies like Ryan and EY help producers reduce their tax burden by, among other methods, maximizing these deductions."

Ryan alleges that "[u]nder the guise of 'auditing' clients," EY "misappropriated a substantial trove of Ryan['s] intellectual property," which it made available to its employees in a new, competing federal royalty and severance tax group. Then, "in violation of fundamental accounting rules prohibiting auditors such as EY from using their attest function to profit from consulting services, at least two EY employees, including [] Thakkar . . . , used Ryan's work papers to interfere with Ryan's relationships with its existing clients and compete for business with new clients."

Based on these allegations, Ryan pleaded multiple causes of action against either EY or Thakkar or both, including for misappropriation of trade secrets, breach

4

of contract, common law fraud, tortious interference with existing contracts, and tortious interference with prospective business relations. Ryan also sought to enjoin appellants from, among other things, seeking, retaining, or using Ryan's confidential or proprietary information to conduct audits or provide severance tax or federal royalty services.

Appellants jointly moved to dismiss Ryan's cause of action against EY for tortious interference with prospective business relations under the TCPA. The TCPA motion did not challenge Ryan's other causes of action.

In Ryan's original, first amended, and second amended petitions, the claims for tortious interference with existing contracts and prospective business relations were pleaded together. The petitions did not identify the specific factual allegations underpinning the prospective relations claim beyond that the claim incorporated "the preceding paragraphs" in the respective petitions, which included descriptions of the public-audit communications and conduct. But after appellants filed their TCPA motion, Ryan filed a third amended petition, which separated the two tortious interference claims and alleged interference with its prospective business relations "via a variety of unlawful means."[2] While still incorporating the petition's previous paragraph about public audits, Ryan's third amended petition more specifically

[2]     Ryan's third amended petition is the petition at issue here.

5

alleges that EY is liable to Ryan for tortiously interfering with Ryan's prospective business relations because:

- "Ryan had a reasonable probability of obtaining the prospective contracts in federal royalty and severance tax services that were subject to EY's interference."

- "The interference was intentional because EY's employees and agents specifically knew of Ryan's prospective contract in which EY interfered."

- "[EY and Thakkar] were aware of facts and circumstances that would lead a reasonable person to believe[] that Ryan's prospective business relationship existed, including specific knowledge that this was a small market of competitors[,] with Ryan being EY's only other competitor in the federal royalty space, and the dominant force and only other competitor with the requisite expertise in the severance tax space."

- "EY interfered in Ryan's prospective business relations for the provision of federal royalty and severance tax services via a variety of unlawful means, each of which would be independently actionable as a recognized tort. This includes the misappropriation of Ryan's trade secrets, tortious interference in the contractual confidentiality obligations of others to Ryan, tortious interference in the restrictive covenants of former employees, and making fraudulent misrepresentations to Ryan and prospective customers, as set forth below."

- "These unlawful acts committed by EY as part of its intentional interference were the but-for and proximate cause of Ryan losing, and EY gaining, prospective contracts to perform federal royalty and severance tax services, including at least two specific such instances . . . . These losses resulted in millions of dollars in lost revenue and profits suffered by Ryan."

Appellants argued that Ryan's cause of action for tortious interference with prospective business relations is based on or in response to EY's audits, which implicate protected speech and association under the TCPA. They explained that

6

public companies file auditor's reports with the Securities and Exchange Commission (SEC). The SEC and the Public Company Oversight Board (PCAOB) have regulatory authority over public-company auditors to further the public's interest in "the preparation of informative, accurate, and independent audit reports." Consequently, independent auditors, like EY, "play an essential role in the regulation and efficient function of the country's capital markets, both public and private," making EY's audits matters of public concern subject to the TCPA's protections.

Alternatively, appellants argued that Ryan's tortious interference with prospective relations claim is based on or in response to communications that "fit[] within the broad definition of the right to petition" because "[t]he audit reports EY authored in connection with its public company audits referenced in [Ryan's] [p]etition were subject to review by both the SEC and the PCAOB."

Ryan responded that appellants' arguments for the TCPA's application miscast its tortious interference claim. According to Ryan, the claim "targets [EY's] interference with Ryan's *federal royalty and severance tax* business, not either party's auditing business." Ryan added that it had identified two prospective clients who were the subject of EY's alleged tortious interference, and that EY does not provide auditing services to either prospective client.

7

After a two-day hearing, the trial court denied appellants' TCPA motion. The trial court stated from the bench:

> I disagree with [EY and Thakkar] that the TCPA applies on a couple of levels in part because I see a separation between the allegations . . . that touch on the auditing function . . . [and] the tortious interference of prospective business relations because I think that is geared specifically towards the severance tax and federal royalty tax services. And so because, as has been made clear to me on the record, the auditing services are separate and apart from the severance tax and federal royalty tax services, to me that does not implicate like the SEC or the . . . PCAOB.

The trial court later issued a written order denying the TCPA motion.

### Standard of Review

We review de novo the denial of a TCPA motion to dismiss. *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In deciding whether a legal action should be dismissed under the TCPA, we consider "the pleadings, evidence a court could consider under [Texas] Rule [of Civil Procedure] 166a, . . . and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a). The plaintiff's allegations, and not the defendant's admissions or denials, constitute the basis of a legal action. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We review the pleadings and evidence in the light most favorable to the nonmovant. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.—Houston

8

[1st Dist.] 2020, pet. dism'd) (en banc); *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Whether the TCPA applies is an issue of statutory interpretation that we also review de novo. *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

### TCPA Motion to Dismiss

Appellants contend they satisfied their initial burden to show that the TCPA applies. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b). Ryan's cause of action for tortious interference with prospective business relations is a "legal action" as defined in the TCPA. *See id.* § 27.001(6) (defining "legal action" to include cause of action). The question is whether Ryan's tortious interference claim "is based on or is in response to" EY's exercise of the right of free speech, the right of association, or the right to petition. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b). Appellants contend all three protected rights are implicated here. We address each in turn.

### A. Statutory Framework

Codified in Chapter 27 of the Texas Civil Practice and Remedies Code, the TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see generally* TEX. CIV. PRAC. & REM. CODE § 27.002. The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to

9

chill First Amendment rights, not to dismiss meritorious lawsuits. *In re Lipsky*, 460 S.W.3d at 589; *see also* TEX. CIV. PRAC. & REM. CODE § 27.002.

To carry out its purpose, the TCPA provides a multi-step process for determining whether a lawsuit or claim should be dismissed under the statute. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). First, the trial court must dismiss a legal action if the movant shows that the action is "based on" or "in response to" its exercise of (1) the right of free speech, (2) the right to petition, or (3) the right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b); *Creative Oil*, 591 S.W.3d at 132; *In re Lipsky*, 460 S.W.3d at 586–87. Under the next step, the nonmovant may avoid dismissal by establishing "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c). Finally, the movant can still win dismissal if it establishes an affirmative defense or other grounds on which it is "entitled to judgment as a matter of law." *Id*. § 27.005(d).

Intertwined with and overlaying this multi-step dismissal process is the TCPA provision exempting certain actions from its application. *See id.* § 27.010; *Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.). When invoked, the court must consider an exemption's applicability after and in the context of the movant having met its initial burden under the first step of the

dismissal process. *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018); *Morrison*, 578 S.W.3d at 680.

**B.     Rights of free speech and association**

We begin by considering appellants' contention that Ryan's claim for tortious interference with prospective business relations "is based on or is in response to" EY's exercise of the rights of free speech and association. Both the right of free speech and the right of association, as defined in the TCPA, involve matters of public concern. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2), (3). The exercise of the right of free speech "means a communication made in connection with a matter of public concern." *Id.* § 27.001(3). A "'communication' includes the making or submitting of a statement or document in any form or medium . . . ." *Id.* § 27.001(1). The exercise of the right of association "means to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id.* § 27.001(2).

Appellants argue these rights are implicated here because Ryan's tortious interference claim is based on or related to EY's conduct and communications in its capacity as an independent public-company auditor, which involve matters of public concern. The TCPA broadly defines a "matter of public concern" to include a statement or activity about (1) "a matter of political, social, or other interest to the community," or (2) "a subject of concern to the public." *Id.* § 27.001(7). But the

definition is not without limit. "To be a matter of public concern, a claim must have public relevance beyond the interest of the parties." *Morris v. Daniel*, 615 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *Creative Oil*, 591 S.W.3d at 136). Private disputes, whether based in contract or tort, affecting only the litigants' fortunes are not matters of public concern. *Id.* at 576–77; *see also Gaskamp*, 596 S.W.3d at 475–77 (noting that tort claims with no potential impact on the wider community or a public audience are not TCPA matters of public concern).

According to appellants, an independent public-company auditor, like EY, serves as a "public watchdog" and is "central to the effectiveness of the public financial markets." They say, "An auditor's communications with its client and its own internal documentation are the kind of communications essential for the issuance of publicly available audit reports that are required by the SEC and that can be relied on by the investing public." EY also claims a common interest with federal regulatory entities, like the SEC and the PCAOB, in ensuring the availability of reliable audit reports for the investing public.

We agree, and Ryan does not contest, that EY's audit-related communications and conduct are connected with or relate to a matter of public concern for the reasons appellants state. *See, e.g.*, *United States v. Arthur Young & Co.*, 465 U.S. 805, 817–18 (1984) (recognizing that "[b]y certifying the public reports that collectively

12

depict a corporation's financial status, the independent public auditor assumes a *public* responsibility" and that an independent public auditor's "ultimate allegiance" is to a corporation's creditors, its stockholders, and the investing public). But that does not resolve our inquiry. It matters naught that EY's audit-related communications and conduct are matters of public concern if Ryan's claim for tortious interference with prospective business relations is not "based on" or "in response to" such communications or conduct. And according to Ryan, it is not.

Ryan characterizes its tortious interference claim against EY as "based on" and "in response to" the solicitation of royalty and severance tax business from Ryan's prospective clients, not EY's audit-related communications and conduct. Ryan argues that the solicitation-related communications and conduct are not protected under the TCPA because such actions have no relevance to a public audience of buyers or sellers and concern only "the pecuniary interests of the private parties involved." *Creative Oil,* 591 S.W.3d at 136.

Appellants do not dispute that the solicitation-related communications and conduct are unprotected by the TCPA. Essentially then, the parties agree about which communications and conduct the TCPA protects. That is, they do not contest that EY's audit-related communications and conduct are protected under the TCPA, whereas the solicitation-related communications and conduct are not. But they disagree about the extent to which Ryan's tortious interference claim is based on one

13

or the other type of communications and conduct or both. Consequently, our central inquiry is: what are the factual bases for Ryan's tortious interference claim?

To determine what communications or conduct Ryan's tortious interference claim is "based on" or "in response to," we review the allegations in Ryan's petition. *Hersh*, 526 S.W.3d at 467 (observing that Texas courts have often said that the plaintiff's petition is "the best and all-sufficient evidence of the nature of the action" to show that the TCPA applies to the plaintiff's claims); *Gaskamp*, 596 S.W.3d at 480 ("The nature of a legal action is revealed by the factual allegations in the petition."). Implicit in this analysis is that we do not blindly accept attempts by appellants to characterize Ryan's claims as implicating protected expression and conduct. *See Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd). To the contrary, we view the pleadings in the light most favorable to Ryan—that is, "favoring the conclusion that its claims are not predicated on protected expression." *Id.* EY's expression or conduct that is not a factual predicate for Ryan's tortious interference claim is not pertinent to the inquiry. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 27.003(a) (detailing that a party may file a motion to dismiss if legal action is "based on or is in response to" protected conduct).

Appellants urge that Ryan's pleading alone compels a conclusion that the tortious interference claim is based on or in response to EY's audit-related communications and conduct. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(a) (courts

14

may consider pleadings in determining whether legal action is subject to the TCPA). In support, they look primarily to allegations in the third amended petition's introduction and background sections claiming that, during EY's auditing work, the firm sought and obtained Ryan's confidential and proprietary information from EY's audit clients and then used that information to solicit Ryan's prospective consulting clients, thereby "usurp[ing] at least one prospective contract." Appellants emphasize the petition's introductory statement that EY's audit group "ha[d] repeatedly demanded Ryan's confidential work papers from [mutual] clients" and, under the "guise" of auditing those clients, "misappropriated a substantial trove of Ryan intellectual property," which EY's audit group then made available to "no less than nine separate employees in a new competing federal royalty and severance tax group." And appellants identify several paragraphs in the background section which they contend connect EY's audit-related communications to its alleged unlawful interference with Ryan's prospective contracts. Specifically, they point to the paragraphs alleging:

- "In November 2019, Ryan learned that Thakkar had begun pitching EY's federal royalty services to Ryan's clients. During these solicitations, Thakkar indicated that he had firsthand knowledge of Ryan's confidential federal royalty work papers and that the client would be disappointed by Ryan's deliverables. Because Thakkar had never been employed by Ryan in its federal royalty practice, his firsthand knowledge could not have come from Ryan. Rather, Ryan subsequently discovered that EY's audit group had demanded Ryan's work papers from its severance tax and federal royalty customers (in breach of Ryan's confidentiality agreements) under

15

the guise of 'auditing,' only to then provide Ryan's confidential intellectual property to Thakkar."

- "To obtain the work product, EY's [audit] team requested Ryan's confidential work product from a mutual client under the guise of the documents being necessary for the team to complete the audited financials for the client."

- "[A] Ryan client that acceded to EY's demand and provided EY with Ryan's confidential, proprietary, and trade-secret work product has continually been harassed by similar demands from EY's audit team and rudimentary questions relating to the client's federal royalty schedules."

- "Further underscoring the illegitimate and illegal nature of the audit team's requests, another mutual client approached by EY refused to provide the requested Ryan information, citing the confidentiality obligations and the lack of any legitimate and lawful purpose in EY's requests."

- "[T]he actions . . . by EY have violated the [federal auditing standards that apply to independent public accountants.]"

Additionally, appellants point out that the petition expressly "incorporates the preceding paragraphs [under the count against EY for tortious interference with prospective business relations] as if fully stated therein."

We disagree that the allegations in these paragraphs can be fairly read, in the light most favorable to Ryan, to support appellants' characterization of the audit-related communications and conduct as the factual basis or impetus for Ryan's claim for tortious interference with prospective business relations. Ryan pleaded multiple causes of action against both EY and Thakkar, not just tortious interference with prospective business relations against EY. Consequently, the allegations in the introductory and background sections of Ryan's petition may be the basis or impetus

16

for the tortious interference claim or they may regard another claim, such as misappropriation of trade secrets. The mere inclusion of allegations in the petition, some of which include expression or conduct protected by the TCPA and some of which do not, does not transform the tortious interference claim into one based on or responding to any protected activity. *See Gaskamp*, 596 S.W.3d at 479 (rejecting the argument that speech for one claim can be used to render all claims subject to TCPA protection).

Read in the light most favorable to Ryan, the tortious interference with prospective contracts claim, as set out in Ryan's third amended petition, does not allege that EY usurped Ryan's prospective royalty and severance tax contracts by conducting public audits. As stated by Ryan, "[T]he acts of EY's auditors are insufficient by themselves to give rise to a tortious interference with prospective business relations claim. Rather, those acts give rise to Ryan's trade secret misappropriation claim." It is the "additional, subsequent conduct" that "trigger[ed] Ryan's tortious interference claim—namely, EY's use of Ryan's trade secrets to form a competing federal royalty business and to solicit Ryan's federal royalty customers." That is, while EY allegedly obtained trade secrets in audits and the audits have some link to the claim, the audits are several steps removed from the

solicitations.[3] The core of the tortious interference claim is the subsequent conduct in misusing the information through "reverse engineer[ing]" to develop a competing federal royalty business, which EY and Thakkar then marketed to prospective clients to usurp Ryan's business opportunities.

While the tortious interference claim may be tangentially related to EY's auditing communications and conduct, tangentially related communications and conduct no longer fall within the ambit of the TCPA. *See Union Pac. R.R. Co. v. Chenier*, 649 S.W.3d 440, 447–48 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (concluding that by dropping the "relates to" standard, the revised TCPA "narrowed" the categories of connections such that a claim must be more than "tangential[ly]" related to the exercise of protected rights).

When the Legislature amended the TCPA in 2019, one of the more significant changes to the statute was a narrowing of the categories of connections a claim could

---

[3] Appellants cite *TheraSource, LLC v. Houston Occupational Therapy, PLLC*, No. 01-19-00877-CV, 2021 WL 3868771, at *8 (Tex. App.—Houston [1st Dist.] Aug. 31, 2021, no pet.) (mem. op.), to support their contention that the audit-related communications and conduct are sufficiently connected to the tortious interference claim. In *TheraSource*, the plaintiffs alleged that the defendants interfered with their prospective business by making false statements to a referral agent about the quality of their healthcare services. The cited discussion in *TheraSource* concerned whether the communications at issue were made in connection with a matter of public concern, considering recent case law on the scope of that inquiry. *See id.* at *7 (discussing *Creative Oil*, 591 S.W.3d at 137, and *Gaskamp*, 596 S.W.3d at 479). The issue was not the meaning or scope of the connectivity language in the pre-amendment TCPA—"based on, relates to, or is in response to"—that has since been narrowed. *See id.* at *7–8.

18

have to the exercise of a protected right. *See ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 626 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). Originally, the movant had to establish that a legal action was "based on," "relate[d] to," or "in response to" the movant's exercise of a protected right. TEX. CIV. PRAC. & REM. CODE § 27.005(c) (pre-amendment version). "Relate[d] to" was the most expansive of the three categories of connections and brought tangential communications within the TCPA's reach. *See Chenier,* 649 S.W.3d at 448; *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 604 (Tex. App.—San Antonio 2018, pet. denied) (interpreting "relates to" as a broad qualifier); *Calvin v. Abbott*, 545 S.W.3d 47, 69 n.85 (Tex. App.—Austin 2017, no pet) (interpreting "relates to" as merely denoting "some sort of connection, reference, or relationship"); *see also* WEBSTER'S THIRD NEW INT'L DICTIONARY 1916 (2002) (defining "relate" as "to be in relationship: to have reference"); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1482 (2011) (defining "relate" as "to have connection, relation, or reference"). However, the 2019 amendments deleted "relates to" from the list, thereby requiring future movants, like appellants, to establish that the legal actions they seek to dismiss are "based on" or "in response to" their exercise of a protected right. TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), .005(b) (new version); *see* Laura Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens*

*Participation Act*, 52 TEX. TECH. L. REV. 163, 169 (2020) (noting that the deletion of "relates to" increased the burden on movants seeking dismissal).

The ordinary meaning of the "is based on" component denotes a legal action that has the relevant TCPA-protected activity "as a main ingredient" or "fundamental part" of the challenged legal action. *See Serafine v. Blunt*, 466 S.W.3d 352, 391 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring) (citing WEBSTER'S at 180 (defining "base" (n.) as "main ingredient" and "fundamental part of something"); AMERICAN HERITAGE at 148 (defining "base" (n.) as "fundamental principle," "underlying concept," "fundamental ingredient," and "chief constituent"); BLACK'S LAW DICTIONARY at 180 (defining "base" (v.) as "to use (something) as the thing from which something else is developed")). The second component—"in response to"—denotes some sort of answer or other act in return. *Id*. (citing WEBSTER'S at 1935 (defining "response" as "act or action of saying something in return, making an answer"); AMERICAN HERITAGE at 1496 (defining "response" as "an answer")).

The deleted phrase "relates to" might encompass EY's audit-related communications and conduct, but "based on" and "in response to" are not so sweeping. Under a de novo review, we cannot agree that EY's audit-related communications are the "main ingredient" or "fundamental part" of the tortious interference claim. Nor is the tortious interference claim in "answer" to EY's

audit-related communications and conduct. As construed in the light most favorable to Ryan, the tortious interference claim has as its "main ingredient" the unprotected solicitation-related communications and conduct. The tortious interference claim is asserted in answer thereto. Even if there is some connection between the audit-related communications and the tortious interference claim, the tightening of the statutory language forecloses appellants' invocation of the TCPA. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (noting statutory presumption that "the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen").

Expanding the definition of "based on" to include the audit communications that EY allegedly inappropriately received second-hand then used to solicit business, as the concurrence suggests, threatens to resurrect the departed "related to" language from the since-amended TCPA. The primary communication the cause of action rests on is the solicitation itself, not the information allegedly misappropriated then used to make the solicitation. We decline to read "related to" back into the statute. Consequently, we conclude that appellants have not shown that Ryan's tortious interference claim against EY is "based on" or "in response to" the exercise of EY's rights of free speech and association. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b).

21

## C.     Right to Petition

Appellants also contend that Ryan's claim for tortious interference with prospective business relations is "based on"' or "in response to" the exercise of EY's right to petition because EY's audit reports are filed with, and reviewed by, federal regulators. The Texas Supreme Court has noted the TCPA's definition of the exercise of the right to petition is "expansive." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). It includes "a communication in or pertaining to . . . an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government" and "a communication in connection with an issue under consideration or review by a[n] . . . executive, . . . or other governmental body or in another governmental or official proceeding." TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(iii), (B). An "official proceeding" is defined as "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." *Id.* §27.001(8).

For the reasons we articulated with respect to the rights of free speech and association, we conclude that EY and Thakkar have not shown that Ryan's tortious interference claim is "based on" or "in response to" the exercise of the right to petition. EY's audit reports filed with, and reviewed by, federal regulators are not the "main ingredient" or a "fundamental part" of Ryan's tortious interference claim. Nor is the tortious interference claim asserted in answer to the audit reports.

## Conclusion

In sum, we conclude that appellants did not meet their burden to show that the TCPA applies to Ryan's claim against EY for tortious interference with prospective business relations.[4] Accordingly, we hold the trial court did not err in denying appellants' TCPA motion to dismiss that claim. We affirm the trial court's order.

Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Farris.

Justice Farris, concurring.

---

[4] Having concluded that appellants did not establish that the TCPA applies, we need not address their arguments on the commercial speech exemption or the proof of the tortious interference claim. *See* TEX. R. APP. P. 47.1.