# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-12-00726-CV

**Mary Louise Serafine, Appellant**

**v.**

**Alexander Blunt and Ashley Blunt, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-12-001270, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## O P I N I O N

We withdraw the opinion, concurring opinion, and judgment dated May 1, 2015, and substitute the following opinion, concurring opinion, and judgment in their place. We deny appellant's motion for rehearing.

Mary Louise Serafine appeals from an interlocutory order denying a motion to dismiss brought under Chapter 27 of the Texas Civil Practice and Remedies Code. *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011. Serafine and appellees Alexander and Ashley Blunt are next-door neighbors. Serafine sued the Blunts for various claims related to a property dispute. The Blunts filed counterclaims against Serafine, which she sought to dismiss under Chapter 27. We will reverse in part the trial court's order denying the motion to dismiss and will dismiss the Blunts' counterclaims to the extent that they assert claims based on Serafine's filing of the underlying lawsuit and a lis pendens. We will affirm in part the trial court's order, based on our conclusion that

the Blunts' counterclaim for tortious interference with contract may proceed to the extent that it is based on allegations of threatening conduct by Serafine outside of the filing of the underlying lawsuit and lis pendens. We will remand the case for further proceedings consistent with this opinion, including consideration by the trial court of an award under Section 27.009 of costs and fees relating to the motion to dismiss. *See id.* § 27.009.

## BACKGROUND

The underlying lawsuit arose from a property dispute between Serafine and the Blunts. Serafine's claims against the Blunts are based on her allegations that (1) the Blunts tore down a chain-link fence that had marked the boundary between her property and their property for 35 years and then erected a new wooden fence that encroached upon her property, and (2) the Blunts trespassed upon and damaged her land by digging a trench on or immediately adjacent to her land and by installing a drainage system that will destroy the lateral support of her land. Serafine asserted claims for trespass to try title, trespass, nuisance, negligence, and fraud by nondisclosure, and sought declaratory and injunctive relief, in addition to damages and attorneys' fees. The Blunts answered Serafine's suit and also filed counterclaims, asserting that Serafine tortiously interfered with their contract with the drainage and foundation company and that Serafine violated Chapter 12 of the Texas Civil Practice and Remedies Code by fraudulently filing a lis pendens in the Travis County Real Property Records.

Serafine moved to dismiss the Blunts' counterclaims under Chapter 27. *See id.* § 27.003. The Blunts filed a response and included supporting affidavit evidence. *See id.* § 27.006(a). Neither side sought discovery. *See id.* § 27.006(b). The trial court conducted a hearing, *see id.* § 27.004, at which Alexander Blunt testified. After considering the motion, pleadings, evidence,

and arguments presented by counsel, the trial court denied the motion. *See id.* § 27.006(a). This appeal followed.

## ANALYSIS

### Statutory overview

Chapter 27, also known as the Texas Citizens Participation Act, is an anti-SLAPP statute. *See In re Lipsky*, 411 S.W.3d 530, 536 n.1 (Tex. App.—Fort Worth 2013, orig. proceeding) ("*Lipsky I*"), *mand. denied*, ___ S.W.3d ___, No. 13-0928, 2015 WL 1870073 (Tex. Apr. 24, 2015) ("*Lipsky II*"). "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Id.* The purpose of the Act is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002. The Act is to "be construed liberally to effectuate its purpose and intent fully," but it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions."[1] *Id.* § 27.011.

The Act provides a mechanism for early dismissal of suits based on a party's exercise of the right of free speech, the right to petition, or the right of association. *Id.* § 27.003.

---

[1] The concurrence here and a recent concurrence by Justice Field in *Neyland v. Thompson*, No. 03-13-00643-CV, 2015 WL 1612155, at *11-12 (Tex. App.—Austin Apr. 7, 2015, no pet. h.) (mem. op.) (Field, J., concurring), articulate valid concerns over the breadth of the Texas Citizens Participation Act. We are neither unaware of nor unsympathetic to those concerns, but for reasons explained here and acknowledged in the concurrence, we must construe this Act according to the plain meaning of the words chosen by the Legislature. As written, the Act and its expansive definitions provide little, if any, textual support for limiting its application to more weighty matters of public concern than those exhibited in the neighborhood tussle between Serafine and the Blunts.

Section 27.003 allows a litigant to seek dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a). A "'legal action' means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). "Exercise of the right to petition" includes "a communication in or pertaining to . . . a judicial proceeding." *Id.* § 27.001(4)(A)(i). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

The Act imposes the initial burden on the movant to establish by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right to petition." *Id.* § 27.005(b). The Act then shifts the burden to the nonmovant, allowing the nonmovant to avoid dismissal only by "establish[ing] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). When determining whether to dismiss the legal action, the court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). The court may allow specified and limited discovery relevant to the motion on a showing of good cause, but otherwise all discovery in the legal action is suspended until the court has ruled on the motion to dismiss. *Id.* §§ 27.003, .006(b).

**Standard of review**

We review de novo questions of statutory construction. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We consider de novo the legal question of whether the movant has established by a preponderance of the evidence that the challenged legal action is covered

4

under the Act.  *See Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), *disapproved on other grounds by Lipsky II*, 2015 WL 1870073, at *7. We also review de novo a trial court's determination of whether a nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims.  *Id.* at 726.

A prima facie standard generally "requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true."  *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (internal quotation marks and citation omitted); *see, e.g.*, *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (applying standard in Chapter 27 case and explaining that Legislature's use of "prima facie case" implies imposition of minimal factual burden).  "Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue.  In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Rehak*, 404 S.W.3d at 726 (citation omitted); *cf. Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam) (explaining that summary-judgment movant's presentation of prima facie evidence of deed's validity established his right to summary judgment unless nonmovants presented evidence raising fact issue related to validity).  "Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case."[2]  *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *In re E.I. DuPont*, 136 S.W.3d at 223-34); *see also Lipsky II*, 2015 WL 1870073, at *9

---

[2] "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based."  *Black's Law Dictionary* 351 (10th ed. 2014).

(explaining that "bare, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case" under the Act).

The Act does not define "clear and specific" evidence; consequently, we give these terms their ordinary meaning. *See TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex. 2011). "Clear" means "free from doubt," "sure," or "unambiguous." *Black's Law Dictionary* 307 (10th ed. 2014); *Lipsky II*, 2015 WL 1870073, at *6 (approving this definition of "clear"); *see also Webster's Third New Int'l Dictionary* 419 (2002) ("easily understood," "without obscurity or ambiguity," "easy to perceive or determine with certainty"). "Specific" means "explicit" or "relating to a particular named thing." *Black's Law Dictionary*, at 1616; *Lipsky II*, 2015 WL 1870073, at *6 (approving this definition of "specific"); *see also Webster's Third New Int'l Dictionary*, at 2187 ("being peculiar to the thing or relation in question," "characterized by precise formulation or accurate restriction," or "free from such ambiguity as results from careless lack of precision or from omission of pertinent matter"). We conclude that the term "clear and specific evidence" refers to the quality of evidence required to establish a prima facie case, while the term "prima facie case" refers to the amount of evidence required to satisfy the nonmovant's minimal factual burden. *See Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *10 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.). Thus, if we determine that Serafine carried her initial burden to prove that the Blunts' counterclaims are covered by the Act, we must determine whether the Blunts marshaled the minimum quantum of "clear and specific evidence" necessary to support a rational inference establishing each essential element of their counterclaims.

**Issues on appeal**

Serafine contends that the trial court erred by denying her motion to dismiss because the Act applies and the Blunts failed to establish a prima facie case for their claims of tortious interference with contract and filing of a fraudulent lis pendens. She also contends that the trial court erred by failing to award her attorneys' fees.

### *Jurisdiction over interlocutory appeal*

As a preliminary matter, we must address whether we have jurisdiction over this interlocutory appeal. The Blunts filed a motion to dismiss for want of jurisdiction and also asserted as an issue in their brief that this Court lacks jurisdiction. The Blunts contend that the Act does not expressly authorize an interlocutory appeal when the trial court issues a timely ruling denying the motion to dismiss; they assert that an interlocutory appeal is authorized only when the trial court either grants the motion or fails to rule, resulting in the motion's being overruled by operation of law under the statute. *See* Tex. Civ. Prac. & Rem. Code § 27.008. The Blunts relied on a decision from the Fort Worth Court of Appeals supporting their interpretation of the statute. *See Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519, 528-29 (Tex. App.—Fort Worth 2012, pet. denied) (finding no jurisdiction over order denying motion). This Court has determined, however, that regardless of the meaning of the original statute, the Act as amended in 2013 and a corollary revision to Chapter 51 of the Civil Practice and Remedies Code together confer jurisdiction over appeals such as this one in which the trial court expressly denied the motion to dismiss. *See Kinney v. BCG Att'y Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *3-4 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.); *Combined Law Enforcement Ass'n of Tex.*, 2014 WL 411672, at *4; *see also* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12) (expressly

7

providing for interlocutory appeal of trial court's denial of motion to dismiss filed under the Act);

Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 4, 2013 Tex. Gen. Laws 2499, 2500 (amending

Section 51.014(a)(12)).  We also have determined that the amendment applies retroactively to

interlocutory appeals like this one that were filed before the amendment's effective date.[3]  *See*

*Kinney*, 2014 WL 1432012, at *3-4.  Based on the reasoning in *Kinney*, we deny the Blunts' motion

to dismiss for want of jurisdiction and proceed to consider the remaining issues raised on appeal.

### *Exercise of the right to petition*

The Act imposes the initial burden on Serafine, as the movant, to establish by a

preponderance of the evidence that the Blunts' counterclaims against her are based on, relate to, or

are in response to her exercise of the right to petition.  *See* Tex. Civ. Prac. & Rem. Code § 27.005(b).

When the trial court denied Serafine's motion to dismiss, it did not expressly determine whether

Serafine met this burden.  Whether Serafine met her burden is a legal question that we review de novo

on appeal.  *See Rehak*, 404 S.W.3d at 725.

Serafine contends that she established that the Blunts filed their counterclaims in

response to her exercise of her right to petition, i.e., in response to her filing suit against them,

because the two counterclaims on their face complained of her filing of the lawsuit and her filing

of the lis pendens notice based on her claims related to the property boundary.  In her motion to

dismiss, Serafine asserted that the Blunts' counterclaims on their face were based on Serafine's

exercise of her right to petition because they were "solely about her lawsuit, and not about the

---

[3]  The Texas Supreme Court recently noted that an interlocutory appeal is "clearly the appropriate remedy going forward," but it did not address the issue of whether the amendment retroactively applies. *See In re Lipsky*, ___ S.W.3d ___, No. 13-0928, 2015 WL 1870073, at *2 n.2 (Tex. Apr. 24, 2015) ("*Lipsky II*").

8

facts giving rise to the lawsuit." Serafine provided no other evidence to support this allegation in her motion, instead relying solely on the pleadings in the suit. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a). In the Blunts' response to Serafine's motion to dismiss, they asserted that their counterclaims were not brought "to impinge her right to petition." They argued that their tortious-interference counterclaim was not based solely on Serafine's filing of the lawsuit, but also on her harassing and threatening conduct before and after the lawsuit. They further argued that Serafine incorrectly argued that a lis pendens cannot serve as the basis for a fraudulent-lien claim. On appeal, the Blunts assert that Serafine did not meet her burden because she failed to provide an affidavit or live testimony to show that their counterclaims were filed in response to her exercise of her right to petition.

Under Section 27.006 of the Act, the trial court may consider pleadings as evidence. *Id.* § 27.006(a). The Act does not require Serafine to present testimony or other evidence to satisfy her evidentiary burden. *See Rio Grande H20 Guardian v. Robert Muller Family P'ship Ltd.*, No. 04-13-00441-CV, 2014 WL 309776, at *3 (Tex. App.—San Antonio Jan. 29, 2014, no pet.) (mem. op.) (deciding challenged legal action related to exercise of right to petition based on consideration of pleadings as evidence), *disapproved on other grounds by Lipsky II*, 2015 WL 1870073, at *7. The Blunts asserted in their tortious-interference counterclaim that "Serafine willfully and intentionally interfered with that contract [with the drainage and foundation company] through threats *and the filing of this lawsuit*." (Emphasis added.) They asserted in their fraudulent-lien counterclaim that Serafine knew that the lis pendens she had filed "in relation to this case" was not supported by any valid interest in the Blunts' property. All that the Act requires is that the challenged legal action be "based on, relate[] to, or is in response to" the movant's exercise of the right to petition. Tex. Civ. Prac. & Rem. Code § 27.003(a). We conclude, based on the facts alleged

9

in the Blunts' pleadings and in response to Serafine's motion, that the Blunts' tortious-interference counterclaim is in part based on, related to, or in response to Serafine's filing of the suit and that their fraudulent-lien counterclaim is based on, related to, or in response to Serafine's filing of the lis pendens, both of which filings are exercises of Serafine's "right to petition" as the Act defines that term. *See Lipsky I*, 411 S.W.3d at 541-42 (determining that nonmovant's claims were based on movants' exercise of their right to petition based on facts alleged in nonmovant's pleadings); *see also* Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(i) ("'Exercise of the right to petition' means . . . a communication in or pertaining to: . . . a judicial proceeding."); *James v. Calkins*, 446 S.W.3d 135, 147-48 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (concluding that fraudulent-lien claim based on filing of lis pendens was "communication in or pertaining to a judicial proceeding"). However, to the extent that the Blunts' tortious-interference counterclaim is based in part on Serafine's alleged threats made outside the context of the lawsuit, Serafine has not satisfied her initial burden to show that these portions of the Blunts' counterclaims are subject to the Act. Accordingly, we affirm in part the trial court's order denying Serafine's motion to dismiss the tortious-interference counterclaim, and we will remand the cause for consideration of the Blunts' tortious-interference counterclaim to the extent that it is based on Serafine's alleged harassing and threatening conduct outside the context of the lawsuit.

### Evidence supporting the Blunts' counterclaims

Having determined that Serafine satisfied her initial burden to show that the Blunts' legal action is in part subject to the Act, we turn now to the second step in the analysis—determining whether the Blunts presented clear and specific evidence that established a prima facie case for each essential element of the challenged claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *see also*

10

*Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 309 (Tex. App.—Dallas 2013, pet. denied).

Serafine contends that the Blunts failed to respond to her motion with clear and specific evidence establishing a prima facie case for each essential element of their counterclaims as required to avoid dismissal under the Act. The Blunts respond that they established a prima facie case for each of their counterclaims with clear and specific evidence. We will first consider the evidence that they presented in support of their counterclaim for tortious interference with contract. The elements of that claim are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

The Blunts asserted that they had a valid contract with a drainage and foundation company to install a pump-and-drain system on the Blunts' property and that Serafine interfered with that contract by harassing and threatening the company's employees while they worked on the Blunts' property both before and after she filed the lawsuit. In addition, they alleged that Serafine attempted to stall the project and threatened litigation against the company's owner. The Blunts contend that Serafine's conduct resulted in the drainage and foundation company deciding not to continue the contracted-for work and instead providing an alternative, less desirable solution to their drainage issues. They also assert that Serafine's conduct caused them to pay more for the work. Serafine argues that the Blunts' evidence is too vague and conclusory to support a prima facie case for each element of this claim. We agree with Serafine to the extent that the Blunts' counterclaim is based on her filing of the lawsuit.

11

Alexander Blunt's affidavit, which the Blunts presented in response to Serafine's motion, states that he "hired Austin Drainage & Landscape Development to professionally install a pump and drain system." He also testified at the hearing that he had hired Austin Drainage to resolve a drainage problem that was causing water to gather under his house. He explained that Austin Drainage was going to install French drains around the property and against the border of his house that would tie into a sump pump that would pump the water out to a pop-out valve so it would flow down into the street.

These statements indicate a possible contract, but Mr. Blunt did not provide detail about the specific terms of the contract or attach to his affidavit any contract or other document memorializing any agreement between the Blunts and the drainage company about the scope of work to be done.[4] *See John Moore Servs.*, 441 S.W.3d at 361 (concluding that nonmovant did not present clear and specific evidence of contracts or their terms to establish prima facie case for contract element of tortious-interference claim). Mr. Blunt's testimony was not clear and specific enough to support a rational inference that a valid contract existed between the parties. *See id.*; *see also BH DFW*, 402 S.W.3d at 310-11 (concluding that nonmovant did not establish contract element of tortious-interference claim because it did not establish meeting of minds between it and movant about contract terms); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex. App.—Fort Worth 2009, pet. denied) (determining that general statement that contracts

___

[4] Blunt attached e-mail correspondence with the drainage company's owner to the affidavit to show that the drainage company's attorneys had advised the owner to stop work on the project after Serafine filed her suit. The correspondence includes a reference to a "Suggested Revised Scope of Work" that lists a number of steps, but it does not explain how the steps differ from the original project design, except to indicate that the disputed side of the property can be retrofitted later. There is no explanation about how the recommended changes affect any previously agreed-upon cost of the project or any previously agreed-upon completion date and no testimony that the drainage company ultimately completed the work according to the "Suggested Revised Scope of Work."

with customers existed was insufficient to maintain tortious-interference-with-contract claim when affidavit neither provided detail about specific terms of contracts nor attached any contract to serve as exemplar). Thus, the Blunts failed to establish a prima facie case for this essential element of their claim.

This testimony was also insufficient to establish that Serafine, by filing suit, knowingly induced the drainage company to breach its obligations under the contract. *See John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730 (Tex. App.—Austin 2000, pet. denied) (explaining that to satisfy element of willful and intentional act of interference, party must be more than willing participant; it must knowingly induce breach by contracting party). To maintain their claim, the Blunts were required to provide clear and specific evidence that some obligatory provision of the contract was breached. *See All Am. Tel.*, 291 S.W.3d at 532 (holding conclusory testimony about existence of contracts insufficient to establish that obligatory provision of contract was breached); *see also ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997) (explaining that "inducing a contract obligor to do what it has a right to do is not actionable interference"). The Blunts have not done so here. Although Mr. Blunt testified that the drainage company's lawyers would not allow the company to finish the work while the lawsuit was active, without evidence of the contract's terms, this does not establish a breach by the company. Mr. Blunt further testified that the "work-around" performed by the company meant that 30 percent of his property line has no French drain or drainage protection and that "it's about anywhere from 60 to 70 percent optimization." Without evidence of any contract terms, Mr. Blunt's testimony does not establish that the "work-around" constituted a breach of an obligatory contract provision or that the company had not retained the right to perform a "work-around" if unforeseen problems arose in the course of the work. Similarly, Mr. Blunt testified that the project was delayed for months, but

13

offered no clear and specific evidence about when the project started or of a contract provision specifying that a failure to meet some agreed-upon completion date would constitute a breach of the contract. Mr. Blunt also testified that the work "still cost me about $12,000," and that this was more than he originally contracted for because the drainage company "had to do additional work for the work-around." Other than this conclusory statement, the Blunts offered no evidence about the original price terms that they had agreed upon with the drainage company. Without evidence that the drainage company breached the contract by charging more for additional work, this testimony too is insufficient under the "clear and specific" evidentiary standard to establish a prima facie case of a breach.

Without more specificity about the terms of the Blunts' agreement with the drainage company, the Blunts cannot establish what provisions, if any, Serafine's filing of the lawsuit interfered with. Moreover, without more information establishing the existence of a valid contract, the Blunts cannot establish actual damages. We conclude that the Blunts have not produced the minimum quantum of clear and specific evidence necessary to establish a prima facie case of tortious interference with contract to the extent that their counterclaim is based on Serafine's filing of the lawsuit.

We next consider whether the Blunts established a prima facie case for each element of their fraudulent-lien counterclaim. To establish this claim, the Blunts must show by clear and specific evidence that Serafine (1) made, presented or used the lis pendens with knowledge that it was a fraudulent lien; (2) intended the document to be given the same legal effect as a court document evidencing a valid lien, claim, or interest in the Blunts' property; and (3) intended to cause financial injury to the Blunts. *See* Tex. Civ. Prac. & Rem. Code § 12.002(a); *Brewer v. Green Lizard Holdings, L.L.C. Series SR*, 406 S.W.3d 399, 403-04 (Tex. App.—Fort Worth 2013, no pet.).

14

Serafine asserts that her lis pendens notice was filed in accordance with Section 12.007 of the Texas Property Code, which allows a party to a lawsuit involving title to real property to file notice that the lawsuit is pending with the county clerk in the county where the property is located. *See* Tex. Prop. Code § 12.007.

The Blunts rely on an incomplete chain of correspondence that they assert establishes Serafine's knowledge that her claims against their property are not valid. In June 2008, approximately four years before Serafine filed her suit, she wrote a letter to the Blunts related to the property boundary. This letter is not in the record. In a letter they described as a response to Serafine's letter, the Blunts characterized her letter as "claiming outright ownership of part of our back yard and fence, later explained in conversation under the clause of 'adverse possession.'" The Blunts' letter continues, explaining the Blunts' position that the fence at issue is entirely within their property boundary, based on a 1994 survey. Serafine's response letter states in its entirety: "Dear Neighbors, I have received your letter of June 23, which was a response to my letter of June 5. *Without admitting the correctness of your specific assertions*, I retract the claims and demands in my June 5 letter." (Emphasis added.)

Without Serafine's original letter, it is not clear exactly what part of the property boundary she was disputing in 2008. In her brief, Serafine asserts that her claims in the current suit include a claim related to a strip of land along the parties' front yards, which would not have been covered by the correspondence in 2008. More importantly, regardless of the parameters of the 2008 dispute, Serafine specifically stated that she was not agreeing with the Blunts' position regarding the property boundary. Her decision not to press her claim at that time does not mean that she filed the lis pendens notice of this suit with knowledge that her claims are not valid. The

15

2008 correspondence does not constitute clear and specific evidence of knowledge of a fraudulent claim.

The Blunts asserted without supporting evidence that Serafine filed the allegedly fraudulent lis pendens with intent that it be given the same legal effect as a valid claim. The Blunts acknowledged in their response to the motion to dismiss that they did not have evidence of Serafine's intent to cause the Blunts financial injury, but they argued that her intention was clear. With no evidence of these two essential elements of their fraudulent-lien claim, we conclude that the Blunts failed to establish a prima facie case of a fraudulent lien.

Having determined that the Blunts' counterclaims are in part subject to the Act and that they failed to establish (1) a prima facie case of tortious interference with contract to the extent this claim was based on Serafine's filing suit and (2) a prima facie case of fraudulent lien, we conclude that the trial court erred by denying Serafine's motion to dismiss. We sustain in part Serafine's sole point of error on appeal, reverse in part the trial court's order denying the motion to dismiss, and dismiss both the Blunts' counterclaim for tortious interference with contract to the extent this claim is based on Serafine's filing of the lawsuit and their counterclaim for fraudulent lien.

### *Attorneys' fees*

Serafine requests that if we reverse the trial court's order, we remand the case to the trial court for consideration of an award of relief under Section 27.009. Section 27.009 provides that if the court orders dismissal of a legal action under the Act, the court shall award the movant "(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action

16

from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a). Accordingly, we remand the case to the trial court for the court to consider an award under Section 27.009. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (explaining that reasonableness and necessity of attorneys' fees are generally issues for the factfinder and matters of equity and justice are left to trial court's discretion and are matters of law).

## CONCLUSION

We have determined that the trial court did not err by failing to dismiss the Blunts' counterclaim for tortious interference with contract to the extent that the claim is based on Serafine's allegedly threatening conduct outside the context of this lawsuit, and we affirm the judgment in this respect. We have also determined that the trial court erred by denying Serafine's motion to dismiss (1) the Blunts' tortious-interference counterclaim to the extent that it is based on her filing of this lawsuit and (2) their counterclaim for fraudulent lien. Accordingly, we reverse the trial court's order in these respects. We remand the cause to the trial court for further proceedings consistent with our resolution of these issues on interlocutory appeal.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Pemberton;
    Concurring Opinion by Justice Pemberton

Affirmed in part; Reversed and Dismissed in part; Remanded in part on Motion for Rehearing

Filed: June 26, 2015

17