# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00682-CV

**Trivista Oil Company LLC and Trivista Operating LLC, Appellants**

**v.**

**Fort Apache Energy, Inc., Appellee**

---

### FROM THE 423RD DISTRICT COURT OF BASTROP COUNTY
### NO. 423-9718, THE HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

---

## O P I N I O N

Appellants Trivista Oil Company LLC and Trivista Operating LLC (collectively, Trivista) challenge the district court's order granting Appellee Fort Apache Energy, Inc.'s (FAE) motion to dismiss under the Texas Citizens Participation Act (TCPA). We must determine whether the TCPA applies to all of Trivista's claims and to alleged communications between FAE and landowners who had leased mineral interests to Trivista. We also must determine whether we may address FAE's cross-issue regarding attorney's fees. Because we conclude that the TCPA applies to Trivista's claims against FAE and that we may not address FAE's cross-issue, we affirm.

## BACKGROUND

Trivista is an operator in the Serbin (Taylor Sand) field, with about 250 wells across Bastrop and Lee Counties. The wells hold leases from numerous local landowners. In March 2024, Trivista personnel were denied access to one of the leased properties by lessor

Nancy Littlefield. She informed Trivista that she and some other mineral owners who leased to Trivista had signed an additional oil, gas, and mineral lease with FAE. After speaking by phone with Troy Poole, who worked for Trivista, Littlefield again permitted Trivista to access her property. Poole testified that the lockout lasted "[l]ess than twenty-four hours. I mean, she gave us access nearly immediately." Based on the conversation Poole had with Littlefield, in which she mentioned signing a lease with FAE, Trivista began investigating FAE's activities and learned that FAE had entered into a top lease with Littlefield and had also been contacting other lessor-owners regarding the possibility of top leasing. A top lease is an agreement by which the lessee takes a future interest in a mineral estate subject to the subsisting prior or "bottom" lease. *TRO-X, L.P. v. Anadarko Petroleum Corp.*, 548 S.W.3d 458, 462 (Tex. 2018). The future interest takes effect once the bottom lease has terminated. *Id.* FAE's lease with Littlefield specified that it was "subject to" any existing bottom lease so long as that lease "is now or hereafter remains in force and effect as to any acreage or subsurface depths according to its present terms, conditions and covenants."

Trivista asserts that FAE "contacted an undetermined number of the Lessor Owners in Bastrop and Bastrop Counties in an effort to convince such Lessor Owners to sign a top lease with [FAE] or one of its land services agents." As it relates to Littlefield, Trivista alleges that FAE "contacted Nancy Littlefield seeking to convince her and her co-mineral interest owners to try and terminate their existing Oil, Gas, and Mineral Lease with Trivista Oil Co. LLC covering certain lands in Bastrop County subject to the Act Ranch Lease." Trivista further stated in its live petition that FAE representatives "urged Mrs. Littlefield to sign a new lease with [FAE]. Upon the urging of [FAE], Mrs. Littlefield signed a new lease, also known as a top lease with [FAE]."

2

In May 2024, Trivista sued FAE for tortious interference with a contract and also sought a declaratory judgment "that any top leases taken by [FAE] from any Owner Lessor which is currently a party to an existing [Trivista lease] is invalid and of no force and effect due to the fact that the Bottom Leases are in full force and effect." Trivista sought a temporary restraining order and temporary and permanent injunctive relief. The trial court granted Trivista's request for a temporary ex parte restraining order prohibiting FAE from (1) contacting any lessor of "any oil, gas or mineral lease, owner or operated by [Trivista] where it is clear from the production records of the Operator filed with the Texas Railroad Commission that the oil, gas and mineral lease is sufficient to perpetuate the lease"; (2) entering into any top lease or "option to lease [with] any mineral owner who is a Lessor under an oil, gas or mineral lease owned or operated by [Trivista] where it is clear from the production records . . . that the oil, gas and mineral lease is sufficient to perpetuate the lease"; (3) "exercising or recording any written instrument in the real property records of Bastrop County, Texas obtained by and through the tortious actions specifically alleged in the Original Petition" pending a hearing on Trivista's application for temporary injunction. Before the temporary-injunction hearing, FAE filed a motion to dismiss Trivista's claims under the TCPA, alleging that its communications with mineral owners implicated FAE's right to free speech. In July, the trial court denied Trivista's application for temporary injunction. The same day, Trivista amended its petition, adding a claim for trespass to try title. FAE supplemented its TCPA motion to address the newly added claim. After a hearing, the trial court granted FAE's TCPA motion, dismissing Trivista's claims with prejudice. At the hearing, FAE stated it was seeking

> costs and fees. And with respect to the sanctions, I didn't make a suggestion, but
> if you're inclined, my view it should be at least commensurate with the time and

3

expense associated with the temporary injunction hearing that we had to go through, that we had to pay for, that [FAE] is out of pocket at this point.

FAE did not present further arguments or evidence regarding fees, costs, and sanctions during that hearing, nor did it suggest an appropriate amount for these items in its motion or reply. In its order granting the TCPA motion, the trial court awarded FAE $5,000 in court costs and attorney's fees and additionally ordered Trivista to pay sanctions in the amount of $5,000.

Trivista filed a notice of appeal on October 18, 2024. On November 1, FAE filed a motion to modify the judgment, to which it attached evidence of its costs and attorney's fees, which far exceeded the $5,000 awarded by the court. FAE also sought to increase the amount of the sanctions award. The motion was not set for a hearing within the time when the court retained plenary power and was overruled by operation of law. FAE filed a notice of appeal from the trial court's denial of FAE's motion to modify on January 31, 2025.

## ANALYSIS

On appeal, Trivista asserts the trial court erred in granting FAE's motion to dismiss because (1) FAE's communications soliciting top leases fall under the TCPA's commercial-speech exemption, (2) FAE did not carry its burden to show that its communications regarding top leases were connected to a matter of public concern, and (3) FAE did not show that Trivista's trespass to try title and declaratory judgment causes of action were based on or in response to FAE's exercise of the right of free speech. FAE raises a cross-issue that this Court should remand to the trial court solely for determination of a reasonable amount of attorney's fees and court costs, asserting that the amounts awarded to it by the trial court were insufficient.

4

**The TCPA**

The TCPA "protects speech on matters of public concern by authorizing courts to conduct an early and expedited review of the legal merit of claims that seek to stifle speech through the imposition of civil liability and damages." *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). Courts review a TCPA motion to dismiss using a three-step process. *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). First, the movant bears the initial burden to demonstrate by a preponderance of the evidence that the TCPA applies because the "legal action" against the movant is "based on or is in response to" its "exercise of the right of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem. Code § 27.003(a); *Montelongo*, 622 S.W.3d at 296. Second, if the TCPA applies, the claimant may avoid dismissal by establishing "by clear and specific evidence a prima facie case for each essential element of the claim in question." Tex. Civ. Prac. & Rem. Code § 27.005(c); *ExxonMobil Pipeline. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017). Third, if the claimant meets that burden, the court must still grant the motion if the movant establishes by a preponderance of the evidence "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." Tex. Civ. Prac. & Rem. Code § 27.005(d); *ExxonMobil Pipeline*, 512 S.W.3d at 898.

The phrase "clear and specific evidence" describes the quality of evidence required to establish a prima facie case, while "prima facie case" sets the "amount of evidence required to satisfy the nonmovant's minimal factual burden." *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.). A prima facie case will entitle a party to recover if no contrary evidence is offered. *Id.* Bare, baseless opinions do not create fact questions and are not a sufficient substitute for the clear and specific evidence required to establish a prima facie case.

5

*In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (orig. proceeding). Conclusory statements are not probative and will not establish a prima facie case. *Serafine*, 466 S.W.3d at 358. The trial court may consider pleadings as evidence under the TCPA, but the plaintiff must do more than "mere notice pleading"; for pleadings to provide clear and specific evidence, the plaintiff must provide enough detail to show the factual basis for its claim. *RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 190 (Tex. App.—Austin 2020, no pet.) (citing *In re Lipsky*, 460 S.W.3d at 590–91). Allegations alone are often not specific enough to make a prima facie case; the nonmovant must offer or produce evidence of facts to make the prima facie case. *See Montelongo*, 622 S.W.3d at 301; *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 29 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

A non-movant can avoid the TCPA's burden-shifting requirements by invoking one of the statute's exemptions. *Molina Healthcare, Inc. v. State ex rel. Thurmond*, No. 03-20-00077-CV, 2020 WL 7233609, at *2 (Tex. App.—Austin Dec. 9, 2020, pet. denied) (mem. op.) (citing *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018)). When invoked, the trial court must consider an exemption's applicability after and in the context of the movant having met its initial burden under the first step of the dismissal process. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). If the nonmovant shows that an exemption applies, the TCPA may not be used to dismiss the action. *See* Tex. Civ. Prac. & Rem. Code § 27.010; *see also Best*, 562 S.W.3d at 11 (noting that if a TCPA exemption applies, the movant cannot invoke the TCPA's protections); *Martin v. Walker*, 606 S.W.3d 565, 569 (Tex. App.—Waco 2020, pet. denied) (nonmovant has the burden to prove that a statutory exemption applies).

We review de novo whether each party met its burdens under the TCPA. *O'Rourke v. Warren*, 673 S.W.3d 671, 679–80 (Tex. App.—Austin 2023, pet. denied); *Grant*

*v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 873 (Tex. App.—Austin 2018, pet. denied). In determining "whether a legal action is subject to or should be dismissed under this chapter," we may "consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review the pleadings and evidence in the light most favorable to the nonmovant. *O'Rourke*, 673 S.W.3d at 680.

**Trespass to try title and declaratory judgment claims**

We first consider Trivista's contention that FAE failed to show that its trespass to try title and declaratory judgment[1] claims were based on or in response to FAE's exercise of the right of free speech. In its response to FAE's motion to dismiss in the trial court, Trivista argued that it had established its prima facie case for trespass to try title, listed elements of a claim for trespass to try title, then stated, "None of the elements of Trivista's claim for trespass to try title relate to or depend on to any right of free speech, therefore trespass to try title is a claim which is improper to dispose of under the TCPA." Trivista bases its argument on the contention that a claim for trespass to try title generally does not need to rely on any alleged communication, and absent a communication, a claim cannot be based on or in response to the right to free speech.

---

[1] Trivista states in its brief on appeal that "Trivista's [declaratory judgment] claim should have been pleaded as a statutory trespass-to-try-title cause of action. . . . Trivista's amended petition added the proper statutory claim yet retained the declaratory judgment claim, as FAE noted in its renewed special exceptions." The propriety of pleading a declaratory judgment action in addition to a claim for trespass to try title is not before us, but because the parties agree that these claims both arise from the same speech and action, both claims must meet the same fate under the TCPA.

7

In its amended petition, Trivista presented its trespass to try title claim by incorporating by reference "each of the foregoing paragraphs as if the same had been set forth herein verbatim" and stating:

23. Pursuant to TEX. PROP. CODE § 22.001, Plaintiffs request judgment as to their claim of title to the Property. In support of this action, Plaintiffs satisfy the requirements for their claim under TEX. R. CIV. P. 783, and have stated herein; (a) the names of the Plaintiffs and Defendants; (b) the legal description of the premises; (c) that the Plaintiffs claim title to the Property in fee simple determinable; ( d) that Plaintiffs are in possession of and are entitled to possession of the Property; (d) that the Defendant unlawfully claims title to the Property which unlawfully prevents Plaintiffs from their rightful possession; (f) that the Defendant's actions have caused a cloud to be placed on Plaintiff's title, causing it economic injury from lost production and the loss of quiet enjoyment of its title.

24. Demand has been made on Defendant to recognize the superiority of Plaintiff's title but Defendant has failed and refused, and continues to fail and refuse, to do so, claiming an interest in the mineral estate superior to and to the exclusion of the Plaintiff's interests.

The incorporated paragraphs contain no allegation relating to FAE unlawfully claiming title to the property that would unlawfully "prevent[] Plaintiffs from their lawful possession." Nor is there any factual allegation supporting the assertion that FAE's "actions have caused a cloud to be placed on Plaintiff's title." Trivista did allege that "Plaintiffs have learned that Defendant has signed at least one top lease with a Lessor Owner, or its heirs, assigns or successors-in-interest." Neither Trivista's petition nor its response to the TCPA motion specify what property, out of the many properties for which they have leases, is the subject of the trespass to try title action. Counsel for Trivista did not mention the trespass to try title or declaratory judgment claims at the hearing on the TCPA motion.

On appeal, Trivista clarifies that a "single, simple factual allegation undergirds" its claims for trespass to try title and declaratory judgment: "in March 2024, Nancy Littlefield

8

locked Trivista out of 'lands subject to the Act Ranch Lease,' explaining that Trivista's access was 'prohibited because [Ms. Littlefield and her co-lessors] had signed a new lease with representatives of the Defendant.'" Regarding the lockout, Trivista's live pleading asserted that "[i]n late March 2024, Plaintiffs were advised by Nancy Littlefield . . . that Plaintiffs' access to the lands subject to the Act Ranch Lease . . . was prohibited because those successors-in-interest had signed a new lease" with FAE. This allegation relied on the existence of a 1986 lease signed by Littlefield's predecessors in interest and on Troy Poole's affidavit, in which he averred that:

> 7. In mid-March, 2024, Nancy Littlefield informed pumpers for Trivista Operating LLC that they no longer would be granted access to the Act Ranch Lands and the producing wells on the Act Ranch lands.
>
> 8. In late March 2024, I had a telephone conversation with Mrs. Littlefield in which she informed me that she had been contacted by representatives of Fort Apache Energy, Inc. in regard to leasing her mineral rights.
>
> 9. Mrs. Littlefield informed me that she and her brother, John Tonn had signed a new oil, gas and mineral lease with a company named Fort Apache Energy.
>
> 10. After our conversation in late March, 2024, Mrs. Littlefield agreed to grant access to Trivista Operating LLC to the Act Ranch lands. Trivista Operating LLC has remained the P-4 operator of record with the Texas Railroad Commission at all pertinent times.

Poole testified at the hearing on Trivista's temporary injunction that the duration of the lockout was less than twenty-four hours and that Trivista was able to access Littlefield's property again "nearly immediately." He also mentioned that other landowners who may or may not have had leases with FAE had also locked out Trivista on occasion. Trivista attributed Littlefield's lockout to her having been contacted by representatives of FAE in regard to leasing her mineral rights. Trivista alleged that FAE "contacted Nancy Littlefield seeking to convince her and her co-mineral interest owners to try and terminate their existing Oil, Gas, and Mineral Lease with

9

Trivista Oil Co. LLC covering certain lands in Bastrop County subject to the Act Ranch Lease" and urged her to sign a lease with FAE. At the hearing on the temporary injunction, Trivista's president testified on direct examination:

> What [FAE was] trying to do is lock me out. Lock me out of my wells that I'm responsible—health and safety, you know, environmental, how do I go in and monitor and take care of—my operators were trying to get into wells that they were convincing the landowners to lock us out.

Trivista's president also acknowledged that "once in a while" an owner would lock the fence for other reasons, such as wanting a road paved or a gate fixed. But he insisted that locking was more prevalent since FAE "[came] into the field." He explained, "The locked gates is that they're going, trespassing, giving false information to the landowners, or to the royalty owners." On cross-examination, Trivista's president maintained that alleged communications by FAE to lessor-owners were the reason for the lockout:

> Q. And you say—you testified that Fort Apache is, as I wrote it down, convincing the landowners to lock us out. Meaning Trivista. You don't have any personal knowledge that any representative of Fort Apache has done that, do you?
>
> A. Well, based on the information I was receiving from my field people, that's it.
>
> . . .
>
> A. We have been going in and out of these gates for years without an issue. We have to get into these gates. By law we're responsible to ensure and operate those wells. When a gate gets locked, my antennas go up, because I'm responsible to ensure the safety of that well, to ensure that the environmental of that well—so when a landowner locks the gate, you have to ask that question, what provoked them from locking that gate?
>
> Q. And you're guessing that was Fort Apache?
>
> A. No, I'm not guessing. That's what came back, is there was discussions with our field.

10

In short, Trivista's allegations relating to lockouts, including Littlefield's, were premised on the assertion that FAE was communicating with lessor-owners regarding the state of their current leases and wells and the leasing of mineral rights. Even viewing the pleadings and evidence in the light most favorable to Trivista, FAE has demonstrated that Trivista's claims for trespass to try title and declaratory relief rely on and are inextricably intertwined with FAE's alleged communications with lessor-owners. *See Landa v. Rogers*, No. 03-21-00097-CV, 2023 WL 2697880, at *5 (Tex. App.—Austin Mar. 30, 2023, no pet.) (mem. op.) (declining to conclude that plaintiff's claims were based on a "single allegation in a vacuum" and holding that claims were based on the right to petition when they were inextricably intertwined with allegations and evidence concerning communications made in or pertaining to a particular proceeding). The same communications underlying Trivista's claim for trespass to try title form the basis of its claim for tortious interference with a contract. Therefore, whether the TCPA applies to all of Trivista's claims depends on whether the alleged communications "relate to a matter of public concern" under the TCPA.

**Matter of public concern**

The TCPA applies only if Trivista's claims are based on a protected right, such as the exercise of the right of free speech. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a). The TCPA defines "exercise of the right of free speech" as a "communication made in connection with a matter of public concern." *Id.* § 27.001(3). Trivista's claims are based on "communications" by FAE, as that term is defined in the TCPA. *See id.* § 27.001(1). Whether FAE met its initial burden to show that Trivista's claims are based on FAE's "exercise of the

11

right of free speech" turns on whether these communications were "made in connection with a matter of public concern." *See id.* § 27.001(3).

As relevant here, a "matter of public concern" is "a statement or activity regarding "a matter of political, social, or other interest to the community" or "a subject of concern to the public." *Id.* § 27.001(7). Communications "with a limited business audience concerning a private contract dispute, do not relate to a matter of public concern under the TCPA." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019). But nothing in the plain language of the TCPA requires that the communication be made in a public forum, so long as the substance of the communication involves a public matter. *See ExxonMobil Pipeline*, 512 S.W.3d at 898, 901 (concluding that private statements by movants concerning plaintiff's alleged failure to gauge a storage tank related to a matter of public concern due to "serious safety and environmental risks"); *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509–510 (Tex. 2015) (applying TCPA to private communications and concluding that alleged improper provision of medical services by a health-care professional are matters of public concern). To be "in connection with a matter of public concern," communications must concern matters that have "public relevance beyond the pecuniary interests of the private parties involved." *Creative Oil & Gas, LLC*, 591 S.W.3d at 136. That is, "the communication on which the suit is based must have some relevance to a public audience." *McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 916 (Tex. 2023). Moreover, "a communication cannot be made in connection with a matter of public concern unless it had relevance to a public audience at the time it was made, regardless of the happenstance of after-the-fact ramifications." *Id.* at 917.

FAE's communications related to the condition of wells and equipment on numerous properties, Trivista failing to pay owners or produce oil and gas, and questions

12

regarding the accuracy of Trivista's production records filed with the Texas Railroad Commission. In its communications with lessor-owners, FAE focused on assessing the state of the wells it sought to top lease. FAE emphasized both in this Court and in the trial court that this case relates to about 250 wells across 20,000 acres, involving hundreds of landowners, and covering an area that includes the Lost Pines Habitat Conservation Plan. In addition to checking Railroad Commission records for information pertaining to whether wells were currently producing, and noting some extended production gaps, FAE sent agents to inspect wells in the field. One agent reported finding that thirty-six of forty-five wells visited had some form of leak or spill. Agents reported finding equipment in disrepair, storage tanks with holes, and some wells inaccessible due to overgrown vegetation and, in one instance, a "small pond" covering the road to the well despite the fact that the area was experiencing a drought at the time of the visit. The record contains photographs of wells and related equipment in various conditions. One affiant explained thatone well he investigated "was either being produced without the required permit or the production revenue was being misreported to the" Railroad Commission.

Responses to FAE from some lessor-owners further reflect that FAE's communications related to the state of the wells. Littlefield expressed in an email that she was "excited that the existing wells will be cleaned up." Another lessor-owner wrote that he "had to cut off the oil well motor" because it was smoking, but Trivista was "not answering their phone." A lessor-owner who also works with FAE averred that he is "personally aware that my neighbors and other mineral owners in our community are upset about Trivista's well sites being poorly maintained, about oil spilling onto their property, and about not being paid royalties for long periods of time." Just as the supreme court held that private statements by movants concerning plaintiff's alleged failure to gauge a storage tank related to a matter of public concern due to

13

"serious safety and environmental risks" under a former version of the TCPA, *ExxonMobil Pipeline*, 512 S.W.3d at 898, 901, we conclude that FAE's communications regarding wells and other equipment being kept in disrepair or neglected constitute statements or activities regarding "a matter of . . . interest to the community" and "a subject of concern to the public," particularly given the breadth of the land involved and the responses to FAE's communications from members of the community. *See McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 746 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (communications regarding Operator Qualifications implicated a matter of public concern under former version of TCPA). Because the alleged communications were made in connection with a matter of public concern, we hold that FAE met its initial burden to establish the TCPA's applicability.

**Commercial-speech exemption**

Rather than asserting that it has established a prima facie case for each element of its claims, Trivista seeks to invoke the TCPA's commercial-speech exemption. *See Molina Healthcare*, 2020 WL 7233609, at *2. If Trivista shows that this exemption applies, FAE cannot rely on the TCPA to dismiss the legal action. *See* Tex. Civ. Prac. & Rem. Code § 27.010.

Under the commercial-speech exemption, the TCPA "does not apply to"

> a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id.* § 27.010(a)(2). The Texas Supreme Court has construed the commercial-speech exemption as consisting of four elements:

(1) the defendant was primarily engaged in the business of selling or leasing goods [or services],

(2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,

(3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and

(4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman*, 546 S.W.3d at 688. "The burden to establish the commercial-speech exemption is on the party relying on it." *Grant*, 556 S.W.3d at 887. We consider the pleadings and record evidence to determine whether a party has met its burden on the exemption's elements. *See Rose v. Scientific Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *4 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.). Factual allegations in a plaintiff's petition alone may be sufficient to invoke the exemption. *See id.*; *see also Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *6 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.) (analyzing allegations in plaintiff's petition to determine what statements or conduct were at issue and concluding that plaintiff failed to show that the alleged statements or conduct satisfied elements of commercial-speech exemption). The supreme court wrote in *Castleman*, "the only reasonable and logical construction of the exemption" is "that the statement or conduct must arise out of 'the defendant's' sale or lease of goods or services, or that the defendant be acting in its capacity as a seller or lessor of those goods or services." 546 S.W.3d at 688.

FAE asserts that the first and fourth *Castleman* elements are not met. As to the first element, an interest in an oil and gas lease is considered a real property interest. *See Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 332 (Tex.

15

2005); *Ely v. Briley*, 959 S.W.2d 723, 726 (Tex. App.—Austin 1998, no pet.) ("Under Texas law, a mineral interest is a property interest.") (citing *Toledo Soc'y for Crippled Children v. Hickok*, 261 S.W.2d 692, 694 (Tex. 1953)). This is true whether or not the mineral estate is constructively severed from the surface estate. *Holloway's Unknown Heirs v. Whatley*, 131 S.W.2d 89, 92 (Tex. [Comm'n App.] 1939). A mineral estate possesses "all the incidents and attributes of an estate in land." *Harris v. Currie*, 176 S.W.2d 302, 305 (Tex. 1943).

Trivista urges that FAE was engaged primarily in the selling or leasing of goods or services because of the performance often required of a lessee under an oil and gas lease. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 567 (Tex. 1981). Specifically, Trivista asserts that the consideration offered by FAE as the lessee, including covenants to "to produce, utilize, or market the minerals capable of being produced from said wells" and to "deliver to the credit of the lessor, in the pipe line to which lessee may connect its wells, the equal one-eighth part of all oil produced and saved by lessee from said land," are, "indisputably, promises by FAE to perform 'services,' as that term is generally understood." It further asserts that FAE also sells "goods" because that term includes real property under statutes including the business and commerce code and the tax code. *See* Tex. Bus. & Com. Code § 15.03(2); Tex. Tax Code § 171.1012. Trivista argues that FAE's provision of "services" under its leases are the "meat and bones of the business for FAE, Trivista, and every other mineral lessee in Texas."

Unlike the statutes identified by Trivista as defining "goods" to include real property, the TCPA does not define "goods." We ascertain and give effect to the legislature's intent as expressed in the language of the statute, considering the specific statutory language at issue and the TCPA as a whole, and we construe the statute's words "'according to their plain and common meaning, unless a contrary intention is apparent from the context or unless such a

16

construction leads to absurd results.'" *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). At least one court has determined that real property is not a "good" under the TCPA. *See Schmidt v. Crawford*, 584 S.W.3d 640, 649 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("We disagree that the plain, common meaning of 'good' is broad enough to embrace real property."). Another concluded that mineral lessees failed to meet their burden to prove the commercial-speech exemption's applicability, noting that they cited "no authority supporting that unsevered mineral interests are either goods or services." *Howard v. Matterhorn Energy, LLC*, 628 S.W.3d 319, 332 n.5 (Tex. App.—Texarkana 2021, no pet.).

In rejecting an argument that real property was a "good" under the TCPA, the *Schmidt* court said:

> We disagree that the plain, common meaning of "good" is broad enough to embrace real property. "Goods" ordinarily refer to tangible or moveable personal property, as opposed to realty. *See Goods*, New Oxford American Dictionary (3d ed. 2010) (defining term as "merchandise or possessions"); *Goods*, Black's Law Dictionary (11th ed. 2019) (defining term to include tangible or moveable personal property other than money, particularly merchandise, and referring to "goods and services" as an illustration of the term's ordinary usage); *see also Realty*, Black's Law Dictionary (11th ed. 2019) (defining "realty" or "real property" as "land and anything growing on, attached to, or erected on it").

*Schmidt*, 584 S.W.3d at 649. The court went on to acknowledge that the legislature has included real property in the definition of "goods" in the business and commerce code. *See* Tex. Bus. & Com. Code § 17.45(1). "But the Deceptive Trade Practices Act is an instance in which the Legislature intentionally and explicitly defined 'goods' beyond its ordinary usage." *Schmidt*, 584 S.W.3d at 649. We likewise disagree that the plain and common meaning of "goods" includes real property. And, assuming the commercial-speech exemption can apply to FAE as a

lessee, we decline to construe the consideration promised by FAE in exchange for leasing mineral rights as an indication that FAE is primarily engaged in the business of selling or leasing goods or services. The record reflects that FAE is primarily engaged in the business of securing rights to develop oil, gas, or minerals prospects. Because we determine that Trivista has not met its burden to show that FAE was primarily engaged in the business of selling or leasing goods or services, we conclude that Trivista has not shown that the commercial-speech exemption applies. Trivista presents no argument on appeal regarding the establishment of a prima facie case for each essential element of its claims. We accordingly affirm the trial court's dismissal of Trivista's claims with prejudice.

**Attorney's Fees**

In its cross-issue on appeal, FAE asks this Court to remand the case to the trial court to allow FAE to present evidence of the amount of attorney's fees incurred in defending against Trivista's legal action. *See* Tex. Civ. Prac. & Rem. Code § 27.009 (a)(1). FAE asserts the trial court erred in awarding fees without first allowing FAE an opportunity to present evidence of its reasonable fees and costs. FAE explains that it expected to have been afforded such an opportunity after the trial court issued its ruling on the TCPA motion. While it is true that FAE did not present evidence of attorney's fees at the hearing on its TCPA motion, FAE was not precluded from doing so. And after the trial court issued its order granting FAE's motion, including an award of attorney's fees, costs, and sanctions, FAE timely filed a motion to modify the judgment to which it attached evidence supporting its claim for increased attorney's fees and sanctions. This motion was not set for a hearing before the trial court's plenary power

expired, and the trial court did not rule on it. FAE asserts that this motion to modify nonetheless preserved error and provides just cause for reversal.

Unless a party seeking to alter a trial court's judgment files its own notice of appeal, we may not grant the party more favorable relief than did the trial court except for just cause. Tex. R. App. P. 25.1(c); *see also Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex. 2004) (citing *Dean v. Lafayette Place (Section One) Council of Co-Owners, Inc.*, 999 S.W.2d 814, 818 (Tex. App.—Houston [1st Dist.] 1999, no pet.)); *Cities of Allen v. Railroad Comm'n*, 309 S.W.3d 563, 576 (Tex. App.—Austin 2010) (holding appellees' cross-issue was not properly before court because no notice of appeal was filed and appellees sought holding that trial court erred in issuing conclusion of law that was not merely an alternative basis for affirming judgment, but a ground for reversing trial court), *aff'd in part, rev'd on other grounds sub nom. Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156 (Tex. 2011). In this instance, FAE did file a separate notice of appeal on January 31, 2025, more than 105 days after the order of dismissal was signed, and more than fourteen days after Trivista filed its notice of appeal. *See* Tex. R. App. P. 26.1(d) (stating that if party timely files notice of appeal, another party may file notice of appeal "within the applicable period stated above or 14 days after the first filed notice of appeal, whichever is later"). As we explained in our previous memorandum opinion dismissing FAE's appeal for lack of jurisdiction, that notice of appeal was untimely. *Fort Apache Energy, Inc. v. Trivista Oil Co.*, No. 03-25-00068-CV, 2025 WL 626591, at *1 & n.1 (Tex. App.—Austin Feb. 27, 2025, no pet.) (mem. op.). On this record, we cannot conclude that just cause exists to remand the attorney's fees issue to the trial court. Accordingly, we overrule FAE's cross-issue.

19

## CONCLUSION

Having overruled the parties' issues on appeal, we affirm the trial court's order.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed:   December 12, 2025